ROANE, Judge.
The taken in execution in this case being forbidden to be sold, under an idea of a prior lien, the Sheriff was nevertheless bound to proceed finally in the business, and to make his return upon the execution. Upon the refusal of the appellant to give an indemnity, he might, on application to the Court, have had further time given him to make his return, and in the mean time, have put it upon the parties concerned to litigate their right to the property in question, by filing a bill for that purpose. This is said to be within the power of the Sheriff in such cases in Cowper et al. v. Chitty & Blackston; 1 Burr. 34; and perhaps other cautionary steps are within his power. During all these measures, the plaintiff is not bound to -do any thing; he may remain a silent and inactive •spectator: and is to be supposed totally unconcerned in the transaction. *
But, if he shall voluntarily intrude himself therein, he may release the obligation of the Sheriff to proceed, he may loose his lien upon the property and may discharge third persons otherwise liable, in the event of the property seized being insufficient.
The testimony in this cause is, that the plaintiff, instead of leaving the Sheriff to encounter the difficulties in the *20 legal manner, made a compromise, and authorised the Sheriff to release the property; Rice, the now appellee, strenuously insisting, all the while, that the Sheriff should proceed to act in the legal manner: and, as an inducement thereto, offering to give up his claim to the property in question under the deed of trust.
This conduct, I conceive, as far as it respected the sum to he paid in future, amounted to a new contract; a simple contract, indeed, instead of a judgment; and one whereby Black alone became liable, instead of Black and Rice: and the consideration of this new assumpsit on the part of Black, was the releasement of his property then in the hands of the Sheriff.
However improvident this contract might be, in these respects, no person can say that Baird had not a right to malee it; nor, that the consideration on which it was founded was not a good one to sustain an action against Black: but, the effect is, that the old contract was thereby at an end, and with it Rice’s liability to pay the debt.
There is no testimony as at the time of the transaction, that Rice did not consider himself discharged; and if, at a future time, the belief of his being liable is inferred from his consenting, or at least not objecting that the balance of Black’s debt should be comprised in the mortgage on the Hackwood estate, that inference is confronted on one hand, by the circumstance of his forbidding a sale of the property comprised in his trust deed at a time prior, but never pos-., terior to the compromise, although it appears from the record, that many executions attached on that property, as well after as before that period; and on the other hand, this circumstance may be merely considered as a tacit consent to become again liable for that debt, in consideration of advantages expected from the loan of the money by Baird and Westmore. Which, however, were never completed; and, possibly, he might have thought it of little consequence, having somé prospect, for aught appears to the contrary, of being finally relieved by the Court. But, on the contrary, some opinion may be formed of Baird’s own idea of Rice’s being discharged, from his strenuously insisting on a security for that balance, and as soon as he probably got it by assignment of the bonds, seeming to reject the plan of the mortgage by directing M’Kenny not to advance the money.
These inferences are, however, too loose, and too nearly balanced for us tb form any decided opinion from them, as to the ideas of the parties subsequent to the compromise.
*21 The case rests, therefore, upon the transactions at that time, and these, in my opinion, amount to a discharge of the appellee from his ■ liability. Of course, the Chancellor’s decree, making the injunction perpetual, must be affirmed.
CARRINGTON, Judge.
An execution once levied and returned satisfied, discharges the judgment forever; and the law is the same, if what is equivalent thereto, be done. In the present case, the officer had taken the property which he restored by the order of Baird, but expressly against the consent of Rice. The Sheriff ought then to have returned the execution with a statement of the facts; and, if he had done so, no new execution 'could have issued. But, his omission did not affect the justice of the case, or alter the rights of the parties; which must be considered in the same manner as if the return had been made.
I admit that Baird was not bound to indemnify the Sheriff, and if the case rested upon that point, he would have been safe; but, his consenting that the payment should be delayed, and releasing the property, changed the complexion of the case altogether, and discharged Rice from his covenant.
It is true, the answer states that Rice was consenting to the release of the property; but it is not proved; and this part of the answer is not responsive to the bill. Consequently, it is not evidence. I think therefore that the decree of the Court of Chancery is right; and ought to be. affirmed.
PENDLETON, President.
The execution levied on considerable property, restored to Black by order of the creditor on payment of part of the money, and a further day given for the balance, was a total discharge of the judgment as to Rice, at law, if the Sheriff had done his duty in returning the execution with the truth of the case. But he having neglected this, Rice is driven into a Court of Equity for relief; where things are considered as performed, which, ought to have been done.* He must indeed appear with a fair aspect, and not have done any act contributing to the omission; or forborne to do what he might to prevent it.
*22 It is said in the answer, that the transaction was with his privity and consent, and this, if proved, would have bound him, and operated no change in his original engagement. But this is not proved; on the contrary, it is disproved, as far as a negative can be, by testimony of facts inconsistent with the supposition. He pressed the sale, and waived his claim under the deed of trust, which repels the idea that he was consenting to the postponement.
But it is said, he might have given security to the Sheriff, and proceeded to sell under the execution. I fancy this was rather a hasty and sudden assertion of the counsel; for I could refer it to that gentleman himself on cool reflection, whether the Sheriff could at the instance of Rice or' any other, proceed to sell under the execution, when he was ordered to forbear and restore the property by the creditor.
As to a sale under the deed; that was to be made by Leatry when required by Rice and Marvault; the subject don’t appear to have been contemplated by them at this time, and if Rice conceived himself discharged from the engagement, he had no right to proceed under the deed, nor was he obliged to involve himself anew.
In the list of executions filed amongst the testimony in the cause, there appears a series of them at the suit of Knight against Black from December, 1788, to September, 1792. On some of the intermediate ones, property contained in the trust deed was taken; and the sale forbid, at one time by Leatry, and another by Rice: But it does not appear that either of them forbid the sale on the last execution in September, 1792, (four months after Baird’s sale) leyied on two slaves; neither does it appeal that the slaves were in fact sold; but the creditor’s receipt is endorsed for the debt, amounting to 143/. 4s. 1J. From hence two inferences seem natural; first, that Rice considered himself as discharged, and so did not appear to stop this sale, as he had done on the former occasions. Secondly, that 143/. was then raised on the seizure of two slaves; which makes it probable that Baird might have got his money, if he had pursued his execution and not made the compact.
But it is said, that the transaction in February, 1793, shews Rice at that time considered, and acknowledged himself liable for this debt. I forbear to review the evidence of that negociation, because I think myself warranted by reason and precedent, in deciding, that propo *23 sitions on either side, made by parties on a treaty for compromising their differences, if that treaty be not effectual, are not to operate as evidence in a future contest in Court. *
I come now to the conduct of Mr. Baird: The cases from Dougl. and Ves. sen. were cited to prove that a creditor to preserve his remedy against a security, is not obliged to give him notice that the principal has not paid, nor to use legal diligence against him short of the time prescribed by the act of limitations, nor to sue though desired by the security.
Upon which I observe, that the case in Ves. sen. was going a long way for a Court of Equity; and perhaps our act of Assembly, Dec. 1794, C. 116, § 6, R. C. ed. 1819,] which obliges the principal to sue if required by the security, is better. But, if full force be allowed the doctrine, it will not profit Baird in the present case. If, indeed, he had forborne to act, refused to give the security and left the Sheriff to the duty of his office, no laches could have been imputed to him; and Rice’s exoneration must have depended on the final event of that éxecution. But Baird acted, he received a part of his money, gave Black a further day for the balance, and directed the property to be restored.
I conclude, as I began, that the Sheriff ought to have returned that the property seized had been restored-hy order of the plaintiff, which would have been a discharge of Rice at law, and this Court considering it as done, will give it the legal effect.
Affirm the decree.†

[* See act of Feb. 8, 1808, c. 129, ed. 1808; c. 134 § 25, R. C. 1819, and Carrington v. Anderson, 5 Munf. 32 ; Stone v. Pointer, 5 Munf. 287 ; and Roane, J. in Cole v. Fenwick 1, Gilmer, 139.]

[* Fonb. Treat. B. I. c. 6, § 9, 2 vol. 419, 2 Jim. ed.]

[ * Williams v. Price, 5 Munf. 538.]

[† And where a plaintiff directed the Sheriff to put off the sale of the property taken in execution, to a day after the return day of the writ, holding the property subject to the execution and to suffer it to remain in the possession of the principal defendant or his sureties / such direction having been made without the approbation or acquiescence of the sureties, operates a release to the sureties from ihat or any subsequent execution. And if a subsequent execution be taken out> the Court should quash it on the motion of the sureties. Bullitt's exrs. v. Winstons 1 Munf. 169.]