HOPKINS & D. MANUF"G CO. v. PARKER & W. CO. See Case No. 6,695.

## Case No. 6,696.

### HOPKIRK v. McCONICO et al.

[1 Brock. 220.] 1

Circuit Court, D. Virginia. May Term, 1812.

SURETYSHIP—LIABILITY—COLLECTION OF DEBTS.

1. On the 13th of December, 1790, a bond with two sureties was executed, the condition of which was, that the principal obligor should collect debts due to the obligees, and account faithfully for his transactions, as often as required, and at least on the 1st of September of every year. On the 21st of October, 1799, the collector and principal obligor, rendered an account, showing a considerable balance against him, and on the 15th of February, 1800, the collector executed a deed of trust to secure this balance, whereupon the time of payment was extended by the obligees. This deed was made at the instance of the obligees, and the obligees promised to surrender the bond, provided the deed was recorded in the spring of 1800. The deed was delivered to the obligees, who did not record it, till September 1800. In the stated account, the collector debited the obligees with a legacy, bequeathed by one of the obligees, to the son of the collector, the collector being the guardian of his son. The collector's stated account afterwards turned out to be false and fraudulent, he having received more money than he accounted for, and suit was brought to charge the sureties. The property conveyed by the deed of trust was sold, and the proceeds fell short of the amount appearing due by the stated account to secure which the deed was made. Held, that the promise to surrender the bond, on condition of executing the deed, and recording it in the spring, was still binding on the obligees, though the deed, in point of fact, was not recorded until the fall, the failure to record it in the spring, being the fault of the obligees, who had possession of it.

[Cited in Ashby v. Smith, 9 Leigh (Va.) 169.]

2. The sureties were exonerated from all responsibility, for so much money as appeared to have been collected, and to be due by the stated account, at the date of the deed, the deed having been made with the assent of the obligees, and indulgence having been extended to the collector, in consideration of the deed.

[Cited in Fellows v. Prentiss, 3 Denio, 521; Haskell v. Burdette, 35 N. J. Eq. 33.]

3. But the sureties were still bound for so much of the money of the obligees as had been

1 [Reported by John W. Brockenbrough, Esq.]

collected, prior to the execution of the deed, and not accounted for by the collector in his stated account, inasmuch as the failure to render a true account, was a breach of the condition of the bond.

4. Quaere, if the sureties were not discharged from responsibility for the legacy, as the credit was admitted by the obligees, knowingly.

This suit was brought by James Hopkirk, surviving partner of Spiers, Bowman & Co., of Glasgow, to charge the sureties of Christopher McConico, with the amount collected by McConico, as the agent of the firm, and not paid to them. The bill stated, that on the 13th of December, 1790, there was due to the firm of Spiers, Bowman & Co., in Virginia, £39,066 0s. 11¼d., and the documents were placed in the hands of McConico, who gave bond with Thomas Shore, and James Campbell, as sureties, in the penalty of £20,000, conditioned faithfully to collect the debts due to the firm, &c., and account fairly for his transactions as often as required, and, at all events, on the first of September of every year: that McConico had not performed the condition of his bond. His sureties having evinced uneasiness, he rendered an account, as he pretended, up to the 21st of October, 1799, showing a balance in favour of the firm of £3460 17s. 0½d. In that account, he debited the company with a legacy left by A. Johnson, to his son, (McConico being the guardian of his son,) of £666 13s. 4d., the said A. Johnson, being a member of the firm of Spiers, Bowman & Co. No objection to the credit was made, but the son refused to assent to it. To relieve the sureties as much as possible from this responsibility, a deed of trust was accepted from McConico, to secure the payment of this balance, bearing date the 15th of February, 1800. The balance not being paid, according to the terms of the deed, the property was sold, and the proceeds amounted to £3727 3s. 5d. The sale occurred on the 5th and 6th of March and 6th of May, 1801. The firm were compelled to pay £490 10s. 7d., to clear the trust property from prior incumbrances, leaving a balance due under the deed, on the 7th of January, 1802, of £871 9s. 10d. Besides this, it had been discovered, that McConico had received large sums during his agency, with which the company were not credited in his stated account. The bill concludes by praying, that McConico might be compelled to state on oath, the amount of his collections, and pay it to the plaintiff, or if he was unable to pay, that his sureties should be held responsible. In their answers, Conrad Webb, administrator of Thomas Shore, one of the sureties of McConico, and Campbell, the surviving surety, admit the execution of the bond as stated in the bill. They say, that on the 14th of March, 1798, they wrote to Strange, the then agent of the plaintiff, urging him to bring suit against McConico, and procure a settlement, as they would not be liable for moneys collected by him after the 14th of May, ensu-

ing. This letter was among the exhibits in the cause. They insist, that as further credit was given till March, 1801, in consideration of the deed, they were discharged from all further responsibility. It was expressly stipulated too, that the bond should be delivered up on the execution of the deed. They deny that McConico had rendered a false account, or if he did, that they are responsible. They deny, too, that the deed of the 15th of February, 1800, was made by their advice, consent, or procurement. After its execution, Campbell was informed of its execution, and expressed gratification that the debt was secured, and the sureties exonerated. They were consulted on the terms of sale on the 3d of March, 1801, but with the express stipulation, that nothing then done should change the relations of the parties. The letter of McConico of the 3d of March, 1801, requesting an alteration in the terms of sale, and the assent of Strange, and the securities, with a reservation that it should not operate to charge, or exonerate the sureties, was filed as an exhibit in the cause. The defendants allege that the property, except the slaves, was sold for fifty per cent. below its value, and if conveyed to them, that it would be sufficient to satisfy the whole claim, and pray to be dismissed, &c. McConico, in his answer, produced a letter from Strange, bearing date the 13th of February, 1800, (just two days before the execution of the deed,) in which he says—"I now inclose you a deed of trust for you to execute, which please have done before such witnesses as will be able to attend the district court, in the event of your being out of the way, so as you cannot acknowledge it. As I am acting for others, it is my wish that it should be completed and recorded next term, and I will then, if that is done, relinquish the bond I hold." The deed was executed accordingly, and transmitted to Strange, on which he made the following endorsement. "If $5000 be paid by the 15th of September, property not to be sold sooner than October 21st, 1801, nor deed to be recorded before the district court for September, 1801, if re-acknowledged." The deed was recorded in the fall of 1800, the $5000 not having been paid by McConico.

MARSHALL, Circuit Justice. This suit is instituted to obtain a settlement of the accounts of Christopher McConico, as collector for the plaintiffs, and to obtain payment from the other defendants, who were his sureties, in a bond given for the faithful performance of his duty as collector. The securities oppose this claim, because, in 1800, McConico gave to the agent of the plaintiffs a deed of trust on all his property, to secure the balance then stated to be due, upon receiving which, the plaintiffs, by their agent, gave him further time for payment. The deed, too, was executed on the faith of a letter promising to relinquish the bond, if the deed should be

executed according to the requisition of the letter. This prolonged credit, it is urged, has entirely discharged the securities.

The two cases cited, the one from 2 Brown, Ch. 579 (Nisbet v. Smith), and the other from 2 Ves. Jr. 540 (Rees v. Berrington), do certainly establish the principle for which the defendants contend. A stipulation, without the knowledge of the surety, giving further time of payment to the principal debtor, is held to discharge the surety. But the plaintiff contends, that this case differs from those which have been cited, because the bond, from its terms, not being for the payment of a particular sum, at a specified time, but of money as it should be collected, the obligation is a continuing obligation, and, therefore, not released by suspending proceedings upon it. The counsel for the plaintiff did not appear to rely much upon this argument, as applicable to the debt, then known to be due, and the court cannot perceive its force. An action for any sum of money actually collected, accrues as soon as it is collected; and if that action be suspended, such suspension appears to the court, to release the sureties with respect to the sum so suspended, as completely as they would be released from the whole bond, if the whole money had been collected. The court feels no hesitation in declaring the sureties discharged, for so much as was known to be due, when the deed of trust was executed.[2]

But a question of much more difficulty remains to be decided. A much greater sum had been actually collected, than was reported by the defendant McConico, or known by the agent for the plaintiff to be in his hands. Are the sureties discharged for this sum also? On this question, I have felt great doubts, nor are those doubts entirely removed. I must suppose the settlement establishing the balance for which the deed of trust was taken, to have been made on an account rendered by McConico. If that account did not contain a true statement of the sums in his hands,

it was a false account, and a fraud committed on the plaintiff. The agreement exhibited by the deed would not, in the opinion of the court, have restrained the plaintiff from suing, immediately, to compel a fair account, and payment of so much as had been collected and fraudulently concealed. Much less could it have restrained the sureties from instituting a suit in chancery, to compel a full settlement and payment of what was really due. But it is urged, and urged with great force, that, by this settlement, the sureties were lulled into perfect security, and prevented from taking any measures for their own safety; that this supineness was produced by the act of the plaintiff, and ought to disable him from proceeding to fix any loss, afterwards discovered, on the sureties. The court has felt the weight of this argument, but it is opposed by others which possess still greater influence.

It has been already stated, that this settlement must be considered as having been founded on the account rendered by McConico. This account is false and fraudulent. It is a breach of the condition of the bond. That condition requires, that he should account fairly for his transactions as often as he should be required so to do; and at least, once in every year, namely, on the first day of September. This condition is broken by the rendition of a false account. The securities are liable for this breach. The case is a hard one, but I cannot say, that they are discharged from this liability by an agreement produced by the fraud. The defendants rely also on the letter of Strange, of the 13th of February, 1800. I concur with them in opinion, that the promise to deliver up the bond, if the deed be recorded in the spring of 1800, does not lose its obligation by the postponement of recording the deed until the fall of that year, because the postponement was made by the plaintiff's own agent. He has himself released the condition of his promise, and the promise remains absolute. On this

---

[2] The principle upon which sureties are discharged, in consequence of any new agreement between the creditor and principal debtor, seems to be, that the remedies of the surety are thereby impaired (Croughton v. Duval, 3 Call, 69), and the surety's remedy is impaired, and the surety is consequently discharged, if the creditor, after the debt is due, preclude himself from proceeding against the principal for a moment (Hill v. Bull, Gilmer, 149; Bennett v. Maule, Id., 328). But if the agreement to grant indulgence is conditional, as that the principal debtor should pay a portion of the debt on a specified day, and the condition is never performed, the sureties are not discharged, for they are not thereby deprived, by the act of the creditor, of any remedy against the principal. Norris v. Crummey, 2 Rand. (Va.) 323; Hunter's Adm'rs v. Jett, 4 Rand. (Va.) 104. So, where the agreement to give time, is without consideration, or upon valuable consideration, with a stipulation that the creditor may proceed against the debtor, if required by the surety, or where the agreement to give time is made, with the knowledge and assent of the surety, in none of these cases is the surety discharged. Green, J., in Norris v. Crummey, supra; Hunt-

er's Adm'rs v. Jett, supra; U. S. v. Nicholl, 12 Wheat. [25 U. S.] 505; McLemore v. Powell, Id. 554. It is not sufficient that the surety may sustain no injury by a change in the contract, or that it be made for his benefit. He has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal. Therefore, where an official bond was given by a deputy collector of direct taxes, under an appointment for eight townships, designated by name; and the instrument of appointment specially referred to, was afterwards altered by the collector and his deputy, but without the consent of the sureties, so as to embrace another township, the sureties were not responsible for moneys subsequently collected, and not paid over. Miller v. Stewart, 9 Wheat. [22 U. S.] 680. See, also, U. S. v. Tillotson [Case No. 16,524]. The cases decided in the courts of the United States, on the law of principal and surety, are collated by Mr. Peters, in 3 Cond. R. 394 [9 Cranch (13 U. S.) 212], in a note [to U. S. v. Giles], to which the reader is referred. See, also, Baird v. Rice, 1 Call, 18; Bullitt's Ex'rs v. Winstons, 1 Munf. 269; Winston v. Whitlocke, 5 Call, 435.

letter, the sureties contend that they are discharged at law, and as they are not bound in equity further than at law, this suit cannot be sustained against them. They are said to be discharged at law, because if suit was instituted at law against them on the bond, accord and satisfaction might be pleaded, and would bar the action. If the sureties are correct in their law, there is an end of the case. But the court is not of opinion that accord and satisfaction would bar this action. To this plea it might be replied, that the accord was obtained by the fraud of McConico, and, as at present advised, I think that a verdict found on such issue for the plaintiff, would authorise a judgment. If the defendants chose to demur to the replication, it is believed that the demurrer would be overruled, and the replication sustained. If this be correct, the sureties are not discharged at law. The question is, whether a court of equity will relieve against the bond, or decree against the defendants, or leave the parties to their action at law? I should incline to the latter course, were it not for the obvious advantage which the settlement of such an account as this, before a commissioner, has over a settlement before a jury. With respect to the sum for which McConico took credit as the guardian of his son, I rather incline to the opinion, that the securities must be discharged from it, because the agent for the plaintiff admitted it knowingly. This, however, would seem to be a question between the two securities, because one of them is security to the guardian's bond.[3]

Decree: That the defendants. Conrad Webb, as administrator of Thomas Shore, and James Campbell, are exonerated by the conduct of the plaintiff's agent from all responsibility, for so much of the money collected by Christopher McConico, as was known to that agent to have been collected, when the deed of trust of the 15th of February, 1800, was executed; but that the said sureties remain bound for so much as had been actually collected, and not accounted for by McConico, and the account is referred to a commissioner, to state the sums which had previously been collected by McConico, and were not contained in any account rendered by him to the plaintiff or his agent.

---

[3] "There was formerly a doubt on the question, whether a legacy due to minors could be safely paid by the executor to the father or the legatees, but the opinion latterly has been that the payment is at the risk of the executor. Dagley v. Tolferry, 1 P. Wms. 285; 1 Eq. Cas. Abr. 300, pl. 2; Cooper v. Thornton, 3 Brown, Ch. 96. In all these cases, the question seems to have been, whether a legacy to a minor could safely be paid to the father, as father or natural guardian merely. It is no where denied that a father duly appointed as guardian by the competent authority, is authorised to receive legacies, and distributive shares belonging to his ward. Kent, Chancellor, in Genet v. Tallmadge, 1 Johns. Ch. 3. See, also, Morrell v. Dickey, Id. 153; Williams v. Storrs, 6 Johns. Ch. 353." 2 Rob. Pr. 154, 155.