Cab.k, J.
It has long been the settled rule of equity, that where there are principal debtor and surety, if the creditor, without the knowledge and consent of the surety, makes any contract with the principal, by which he ties up his hands from proceeding to recover his debt, or discharges any specific lien on the principal’s property, out of which he might have made the debt, he releases the surety from his obligation. The courts of law, seeing the justice of this rule, have, in controlling their process of execution, translated it to their forum, and exercise it in the spirit of equity. Let us see whether, in the case before us, it has been properly applied.
*139 The evidence shews, that before the judgment of Vass was obtained, the whole of W. Thompson's property was conveyed in trust to satisfy claims, which, upon a subsequent sale, it was found not nearly adequate to satisfy. It was further proved, that when Vass's execution of October 1827 was issued, and during the time it was in force, W. Thompson did. not possess any unincumbered property, on which the execution could be levied, except the crop of wheat, that grew upon the land embraced by the deed of trust. These facts shew clearly, that the principal debtor was, if not wholly insolvent, in such circumstances that little or no reliance could be had on him for the money, and that the sureties alone could be depended on. It therefore behooved the creditor to deal cautiously, lest by any slip he should let go his hold on them. Of this he seems to have been well aware: for, on obtaining the award of execution on the forthcoming bond, he inquired of the sureties, whether or no they were whiling, that he should extend indulgence to their principal on that judgment against him arid them; to which they consented, and said they were anxious that the plaintiff should give W. Thompson as much indulgence on the judgment as possible, so as to enable him to pay as much of the same as possible. This evidence shews the large (I might almost say the unlimited) discretion given by the sureties to the creditor; and, not the willingness merely, but the anxiety they felt, that he should extend to their principal debtor as much indulgence as possible. It shews too, one of the motives which induced them to wish this indulgence given : W. Thompson was in a situation, in which nothing was to be gained, but something might be lost, by harsh measures. He had no property; and a ca. sa. levied would at once have deprived him of all chance of paying; but let him alone, leave him at liberty, and if he had the wish to pay the money (as the sureties seemed to believe), he might from time to time *140 pay sums, which, though small, might in the whole sensibly lessen the burden which was to,fall on them. Thus we see, the creditor and the sureties were working together to the same end; he, by levying his execution on their property, might make his debt at once; but they were anxious to put off the evil day, and get as much of the debt as they could out of the -principal, and the creditor was willing to gratify them, so far as he could do it safely. In pursuance of this plan, the record tells us, that after this agreement, the plaintiff ordered the execution to lie until further orders; and the defendant Ward (who, it must be remarked, is the only surety before us) at various times afterwards, and before the issuing of the last execution, expressed to the plaintiff his gratification at the indulgence he was extending to W. Thompson; that he hoped Thompson would be able to work through at last; and he requested the plaintiff to continue the indulgence. This state of things continued till the fall of 1827, when seeing a chance to secure the new crop of wheat, Vass took out another execution, and the sheriff levied it on the wheat, and also on .a slave and four horses. We do not learn this from the return, for that is, merely, “ executed, and proceedings stayed &c.” And here commences that interference of the plaintiff, which is said to have released the sureties.
This interference consisted in his letter to the sheriff of the 7th December 1827. Now, let us remember, that it is no technical rule of the common law, which we are considering, but a rule of the courts of equity, administered on equitable principles. Here were the sureties and the creditor co-operating to the same end; and.that end, the benefit of the sureties. In the very last conversation we hear of, Ward, the sole appellant, expressed his gratification at the indulgence extended, hoped W. Thompson would -be able to work through at last, and requested, the plaintiff to continue the indul *141 gence. Has this letter of Vass violated the understand- ° . Tiii ing, or what the witnesses called the agreement, between the parties ? The crop of wheat, it is evident, was considered by none of the parties as any thing like equal to the debt. The question was, how it might be turned to best advantage ? The plaintiff, acting in good faith, under the large discretion confided to him by the sureties, directed that it should be ground, sent in flour to market, sold, and the proceeds placed to the credit of the execution. Was this a judicious arrangement? Surely no one can doubt that the flour sent to market and discreetly sold, would bring more than the wheat, knocked down under the hammer. Was the flour so sold, and the credit given ? In the spring following the levy, we find the execution credited by flour, and a small quantity of wheat, to the amount of 200 dollars. If this had not been the proceeds of the same wheat, or had not been the whole proceeds, the sureties might easily have shewn it, and thus have established the fact, that by the plaintiff’s interference they had suffered injury. But, without any proof of this kind, without any intimation from the sureties, that no further indulgence, no further discretion was to be exercised,'—shall we suffer them, under cover of this equitable rule, to shift off the whole burden, to throw the whole loss upon the plaintiff? This would seem to me, a poor return for the kindness and indulgence he had been exercising for their benefit, and at their request, as well as a wide deviation by us from the path of equity. I am clearly of opinion, then, that the transaction with regard to the wheat ought not to release the sureties, or to affect the plaintiff’s right to a new execution.
But it was contended, that the execution being levied also on a slave and four horses, no new execution could issue till this was legally disposed of. It is to be observed, that Vass knew nothing of the levy, further than respected the wheat, and that his directions relate solely *142 to that. If the sheriff levied on the negro and horses, ant^ released them, it was entirely his own act; and it is decided in Winston v. Whitlocke, 5 Call 435 that such release does not affect the plaintiff’s remedies. Moreover, it is in proof, that the slave and horses had been already mortgaged by deed of trust, which deed is not attempted to be impeached; so that there was only an equity in this property, not subject to execution; and the sale since has shewn that the equity itself was nothing, for the whole mortgaged property did not sell for enough to pay the debts for which it was pledged. A court under these circumstances cannot refuse the plaintiff a new execution.
I am of opinion, that the judgment of the circuit court should be affirmed.
Brockenbrough, Cabell and Brooke, J. concurred.
Tucker, P.
It seems to be well settled, that though the levy of a ca. sa. and a discharge of the body, is a satisfaction of the judgment, yet the levy of a fi.fa. is generally no satisfaction, unless it has been made available by sale of the property taken and actual payment of the debt. Thus, in Dykes v. Mercer, 2 Shower 394. where there was a judgment against one of several obligors, and a fi.fa. thereupon, and seizure to the value returned, but the property not sold nor the money paid, it was held to be no bar to an action against the other obligor, because nothing but actual satisfaction was sufficient to discharge him; though it was held that it would be a good bar in an action against him whose property had been taken. And the principle has been fully recognized in many subsequent cases. Thus, this case is cited with approbation in Taylor v. Dundas, 1 Wash. 94. although it was there decided, that a levy upon the property of one defendant, and a replevy bond executed by him, was a satisfaction of the original judgment, *143 so long as the replevy bond was in force. And to the ° . . same effect was a subsequent decision as to a forthcoming bond; Downman v. Chinn, 2 Wash. 190. So too, in Winston v. Whitlocke, 5 Call 435. where there was a motion on a forthcoming bond against one of the obligors, there having been a previous award of execution against the other, the court, approving the decision of Dykes v. Mercer, decided, that the levy of a fi. fa. which was not returned, was no bar to a motion upon the forthcoming bond against the other obligor; thus deciding, in effect, that a levy upon property, unless it appears that there had been a sale, or an actual payment of the debt, was no satisfaction of the demand. And a like decision is to be found in the more recent case of Randolph v. Randolph, 3 Rand. 490.
It appears, however, from the cases cited, that a replevy or forthcoming bond, so long as they are in force, are a satisfaction of the judgment, and no new execution can issue until they are quashed. And, in like manner, where an execution which is valuable, such as an elegit, levari facias or fieri facias, has been executed on the estate of the defendant, a new execution can never issue on the same judgment, until the first execution is quashed. 1 Wash. 95. If the property has been sold to the value of the debt, and the money made, that is of course entire satisfaction. If the property has not been sold, the plaintiff’s remedy is by venditioni exponas, and he is not permitted to harass the defendant by another execution : for if the sheriff’s return is general, that he has levied, it will be presumed, till the contrary appears by the result of a sale, that he has levied to the value; and if the sheriff returns, that he cannot find sufficient property, but only to a certain value, still no new execution can issue, until the officer has proceeded to make what he can by virtue of the first execution.
Such seems to be clearly the state of the law, where the property after the levy is in the custody of the law. *144 How is it, where it appears by the return, that after the . . , . .. , levy, the property has been restored to the debtor by the order of the plaintiff? Consider the case, first, as to the debtor himself. It seems very clear, that if the property is restored upon a new contract in satisfaction of the demand, the judgment is thereby satisfied, and the creditor must look to his new contract for redress. This is distinctly decided in Baird v. Rice, 1 Call 18. and is in strict conformity with justice and good sense, and with the acknowledged law of accord and satisfaction. For a creditor may accept a new contract in satisfaction of a precedent debt or duty, and it will be good, and operate a discharge of the former; Co. Litt. 212. b. But where the property is restored to the debtor as a mere indulgence of the creditor, upon an understanding, either that it should be produced at the day of sale for the purpose of being sold by the officer, or that it should be sold by the debtor, and the proceeds paid over to the creditor, there seems to me no just reason to affirm, that there is a new contract between the parties in satisfaction of the antecedent judgment. Still less, where upon the levy, the creditor purchases the property levied upon, could the debtor have any pretext for saying, that the judgment was discharged in toto, when the property fell short of satisfaction. It amounts to nothing more than a sale by consent of parties, instead of a sale by the officer; and the defendant would be only entitled to a credit for the amount of the sale; upon proof of which, by the return or otherwise, a new execution might issue for the balance. If, in the present case, the execution had been levied upon a slave, who had been at once bought by the creditor, at a price inadequate to discharge the execution, it is obvious, that the debtor would only have been entitled to a credit, and a new execution might issue for the balance. The case of the wheat is not materially different. The defendant was entrusted to sell it. He *145 did so, as the creditor’s agent, and for all the proceeds paid over by him he was entitled to a credit. If the parties differed as to the amount, the court, upon a motion for a new execution, might have directed an inquiry by a jury, and have thus ascertained the proper credit to be indorsed.
How then is it as to the sureties ? I do not perceive that their case is materially different. Admitting that in relation to the process of the court, a court of law may administer the equitable relief, which in a court of chancery is afforded to the surety, yet here it is clear, that the surety has no equitable right to be discharged from the whole debt, but he had a legal right to have the execution credited by the amount of the proceeds of the property which had been taken by the sheriff. His relief is only pro tanto according to the principles laid down by courts of equity themselves in analogous cases. See Mayhew v. Cricket, 2 Swanst. 189. 191. and Law v. East India Company, 4 Ves. 824. The difference is, between an arrangement which goes to the whole of the demand, however limited the indulgence may be, and an arrangement which goes to part of the demand only. In the former case, the surety is discharged altogether, because the court wilL not enter into a speculation as to the probable injury to him. The creditor had no right to make a new contract, without consulting the surety; and having done so, he cannot be received to say it was for the surety’s benefit. But the creditor has a right to accept a partial payment pro tanto, and the surety is bound for the balance. And so, if part is made on an execution, it must be credited, and the surety is bound for the residue. Now here, the execution was levied on a crop of wheat. To a credit for the full amount of that crop, the surety is entitled, but for no more. If the sheriff had levied on a slave, which the creditor bought upon the spot for 500 dollars, the surety would have been entitled to a credit for that *146 sum, or indeed for more, if he could shew that he would probably have brought more at a public sale. But there would be no pretext for saying, that he was thereby absolved from the residue of the debt. The case is the same here, although the amount of the credit was to be ascertained only by matter ex post facto; that is, by getting out and selling the crop of wheat. The amount of the credit when ascertained, is the measure of the relief; and it should be indorsed on the new execution. That amount ought to have been ascertained, if the parties differed about it, by directing an issue, or instituting some other proper proceeding, in which the wheat should be valued at the market price, if it should appear to have been higher than the contract price. I am of opinion, therefore, that although the judgment of the county court was properly reversed, yet that of the circuit court is also erroneous in not having ascertained the value of the wheat crop, and directed a credit for it on the new execution.
I have said nothing about the slave and horses, because the equity of redemption in them was not a fair subject of levy, according to the decisions of this court; and therefore the levy was in so far void. Nor have I said any thing of the cases in which the sureties have been considered as absolved, by withdrawing the execution or releasing the property taken; for, in this case, the only property effectually levied upon was not released. The question as to the suspension of the execution before the return day, is now under the advisement of the court in the case of Chichester v. Mason,* in which I did not sit. Should the court affirm the decree in that case, I should be of opinion, that the judgment of the county court in this should be affirmed, as the sheriff, for aught that appears, might before the return day have levied on other property sufficient to discharge the debt, if the plaintiff had not interfered. But *147 the majority of the court are of a different opinion, and think the evidence establishes an acquiescence on the part of the sureties.
Judgment of the circuit court affirmed.

 Reported post.