Allen, J.
It has not been contended in argument that the sheriff would be liable, if, in the proper discharge of his duty, he took a delivery bond with security sufficient at the time, and the surety should thereafter become insolvent. The law imposes no such re *558 sponsibility upon him.' It was introduced for the con- . , . . venience or the owner, and not in ease of -the sheriff. It would have been unreasonable, 'under such circumstances, to require any thing more of the sheriff than to tajie security good at the time. The act authorizing the sheriff to demand a bond of indemnity was for his benefit, to relieve him from his common law liability ; and therefore the provision was inserted, that the claimant of the property, upon the execution of the indemnifying bond, should be barred of his action against the sheriff levying the execution, unless the obligors in the bond should become insolvent. In the first breach assigned in this case, it is not averred that the obligors were insolvent when the bond was executed, but that they became insolvent afterwards. This, though necessary to be averred in order to shew that the plaintiff suffered injury, would not of itself constitute any ground of complaint against the sheriff. There" must have been some other act, which was improper, and subjected him to the action of the plaintiff; and the loss consequent on that act would respect the damages alone. The facts alleged shew that the sheriff took a codefendant alone as security ; and this, it is maintained, was such an improper act as subjected him to the action of the creditor.
To the correct determination of this question it becomes necessary to enquire what effect a delivery bond given by one of several defendants, whose property has been levied on, has upon the condition of the other defendants, who do not join in the bond; and what is the nature of the undertaking of the surety in the forthcoming bond. Docs a forthcoming bond forfeited constitute an actual satisfaction of the original judgment, so that no further proceedings can be founded on that judgment? If it does—if the remedy of the plaintiff, after a valid forthcoming bond taken and forfeited, is on the bond alone, and that is substituted for the judg *559 meni, which is thereby extinguished, one of two consequences must follow : cither the sheriff incurs a liability if he omits any of the defendants in the execution, (for by so doing they are discharged and the creditor’s rights impaired); or if not, then he may receive as security a codefendant who is sufficient in point of estate ; for, if not taken as security, he would be discharged, and the plaintiff sustains no injury by his being received as the security.
There is nothing in the act which makes it the duty of the sheriff to require every defendant in the original execution to join in the delivery bond. The law was passed for the benefit of the owner of the goods taken; to enable him, at his risk, to retain the possession and use of the goods, and to avoid the expense of their safekeeping until the day of sale. The words relate to the owmer, and make it the duty of the sheriff to suffer the goods to remain with him, upon his tendering a bond with sufficient security to have them forthcoming at the day of sale. His right to retain the possession is not dependant on the other parties to the execution. The law respects his condition as owner, and for his convenience in that character, gives him the privilege of retaining possession of his property upon complying with the terms imposed. And the practice has been in conformity with this construction of the act. Several cases have occurred in this court, where the bond was given by oue of several defendants; and in no instance has it been held that the bond was defective for that cause. If then a bond may properly be taken from one of several defendants, and the sheriff, upon the tender of such a bond with good security, is bound to receive it, does this bond, when forfeited, actually satisfy the original judgment, and exonerate the other defendants from all further responsibility ? It is apparent that if the act is to receive this construction, a provision introduced for the benefit of the debtor may in practice ope *560 rate most harshly on the rights of the creditor. A creditor having several persons bound to him may, without any default on his part, and whilst in pursuit of a legal recovery, be deprived of all remedy except against the one giving the delivery bond and his surety. And if the surety, though sufficient when taken, should, with the principal obligor, prove insolvent before actual payment, the debt would be lost though the other defendants remain solvent. I should be unwilling to come to a conclusion leading to such results, if it can be avoided. Nor do I think any of the cases referred to have established the proposition. They have merely decided that a forfeited forthcoming bond, whilst it remains in force, is a satisfaction of the judgment, so as to prevent a new execution. To the same extent, it may be said that a ca. sa. executed, or a fi. fa. levied on the property of one, is a satisfaction of the judgment. Whilst the body remains in custody, no new execution can issue against that defendant; but if he dies in custody, or escapes, the creditor is remitted to his original judgment. And where a fi. fa. is levied on a sufficiency of goods, the property of one of the defendants, a new execution cannot issue on that judgment until the levy is exhausted. Blumfield's case, 5 Co. Rep. 87. Taylor v. Dundass, 1 Wash. 94.
The first and leading case is Taylor v. Dundass. The bond there in question was a replevy bond. By subsequent cases, however, a replevy bond and a forfeited forthcoming bond seem as to this point to be placed on the same footing: both have the effect of a judgment, the first from the date, the last from the forfeiture. In that case an execution issued and was levied on the property of one defendant, who gave a twelve months replevy bond. Afterwards, but within the year, (as appears from the dates of the executions and order of court,) a second execution issued : and this was quashed on motion, upon the ground that the proceedings under *561 the first execution were a bar to the second. Judge Pendleton in one place says, that a replevy bond is the same as if the estate had been sold to the amount of the debt, and though it is an indulgence to the defendant, the execution is considered as levied and the judgment discharged. This language, standing alone, would cover the whole ground: but in a subsequent passage the judge qualifies it, by remarking that the replevy bond, whilst the execution remains unquashed, is as complete an execution of the judgment, as if the estate had been sold to the full amount of the judgment. So in Downman v. Downman's ex'or, 2 Wash. 189. judge Lyons observed, that a forthcoming bond, whilst in force, was a satisfaction of the judgment. Remarks of the same kind will be found in many of the cases since. In Randolph v. Randolph, 3 Rand. 490. judge Green observed, that the only effect of the decisions is that a replevin or forthcoming bond, even if defective, is a bar to any further proceedings on the judgment until quashed.
These authorities leave no doubt that as long as the bond remains in force, it arrests all proceedings on the original judgment. So long, it constitutes a technical satisfaction, and operates, as it respects the other defendants, like a fi. fa. executed on the property of one. But no case has yet decided under what circumstances and for what cause the bond may be. quashed, so as to remit the plaintiff to his original judgment.
The law provides that the creditor, if the bond at any time be quashed as faulty, besides his remedy against the sheriff, may moreover have execution on his original judgment as if such bond had never been given. By this provision, literally construed, the right to quash would seem to be restricted to the case of defects apparent on the bond. That the creditor has not the right, at his own discretion, to quash a good bond, seems to me clear. The bond, at the least, is a substitute for *562 the levy. When the execution is. levied on the property of the principal, if the creditor interferes and releases it, he thereby discharges the surety. Baird v. Rice, 1 Call 18. Bullitt's ex'ors v. Winstons, 1 Munf. 269. To jjjat jje without good cause, quash the bond which has supplied the place of a levy, and so be remitted to his original judgment and all his remedies to enforce it, would be to authorize him to do indirectly, after the execution of the bond, what he could not do directly, before its execution, without releasing the other defendants. In Hendricks &c. v. Dundass, 2 Wash. 50. the creditor moved to quash the replevy bond, because the execution had been issued without authority. The motion was resisted by the other defendant: but it was hot pretended in argument, nor is there any intimation in the opinion of the court, that the creditor had the absolute right to quash without cause. In Jett v. Walker, 1 Rand. 211. on a judgment against two a forthcoming bond had been taken, which was quashed on the motion of the plaintiff. A second execution was levied on the property of the bail, who moved to quash it, as having issued irregularly. His motion was overruled, and he appealed. The court held that the appeal extended only to the judgment overruling the motion to quash the second execution; and without deciding whether the appellant would be entitled to a supersedeas to the first judgment, even if it was erroneous, affirmed the judgment. By a note of the reporter it appears, that the counsel intimated an intention to apply for a supersedeas to the first judgment, but was informed by the president of the court that the judges ■had considered the subject, and determined to refuse the supersedeas, on the ground that the bond varied from •the execution, and was of course properly quashed. These cases, though not decisive of the very point, tend strongly to prove that the creditor’s right to quash is not unlimited. Nor has it been decided that the ere *563 ditor has no right to quash except for apparent defects. The contrary may be implied from the case of Hendricks &c. v. Dundass, above cited. There the motion was made and sustained upon proof that the execution issued without authority. So, I suppose, it would not be doubted that if the sheriff fraudulently received as security a person notoriously insolvent, the court, upon this fact being shewn, would quash the bond ; and this notwithstanding the sheriff had made himself liable; for he might be insolvent, and unable to indemnify the plaintiff. Such a bond would, in the words of the act of assembly, be faulty, the law requiring the sheriff to take sufficient security.
If the plaintiff may for the cause just mentioned, or for the reasons appearing in the case of Hendricks &c. v. Dundass, quash upon other grounds than that of apparent defects, may he not do so as well after an award of execution on the bond, as before ? The court gives no judgment on the bond; the effect of a judgment is acquired when the bond is forfeited. The bond may be quashed whenever a motion is made for the award of execution, no matter how many terms have intervened since the forfeiture. It may be so quashed as well for defects apparent, as for objections shewn aliunde. Then why should the award of execution change the rights of the parties ? It imparts no new character to the judgment; that was complete upon the forfeiture of the bond; and the proceeding to enforce it is for the benefit of all interested. The surety may have been sufficient when taken, but afterwards have become insolvent ; or he may have been then insufficient, and the fact unknown to the officer or creditor, or so doubtful in his circumstances as to render it uncertain whether his insufficiency could be proved. By proceeding on the bond, the creditor avoids delay : if the debt is made, no further question arises; if the obligors prove insolvent and the money cannot be made, that is conclusive *564 evidence of the insufficiency of the security. It seems t0 rae’ therefore, that after the award of execution, if the execution proves unavailing without any default of the creditor, that furnishes sufficient ground to quash tj-,e bonci. an¿ that the court, upon such proof, should quash it, so as to remit the plaintiff to his original judgment. Any other construction places the creditor who has a joint judgment against his debtors, in a much worse condition than the creditor who has no judgment, or a separate judgment against one. In Dyke v. Mercer, 2 Show. 394. two were bound in a bond jointly and severally, and judgment was obtained in a separate suit against one. A fi. fa. was issued, and a seizure to the value returned, but the property was not sold, nor the money paid. To a second action against the other obr ligor, this matter was pleaded in bar; but the court determined against the defendant, holding that nothing but actual satisfaction by bis co-obligor was sufficient to discharge him. In Winston & al. v. Whitlocke, 5 Call 435. a forthcoming bond having been given by two, execution was awarded and a fi. fa. issued against one of them, under which property was taken ; but the fi. fa. was not returned. Upon the authority of Dyke v. Mercer, it was held that these proceedings were no bar to a motion on the bond against the other obligor. Why should the mere form of proceeding affect so materially the rights of the creditor? Whether he proceeds by a separate action or a joint action, the object is the same, to obtain actual satisfaction ; and if in the one case he may proceed until that satisfaction is procured, there can be no good reason why a mere technical satisfaction should discharge the other defendants finally in the other case. The point has not been expressly decided in this court; but principles have been established incidentally, which cannot be reconciled with the proposition, that a forfeited forthcoming bond extinguishes the original claim, although it is shewn that the *565 bond has proved unavailing. Thus in Randolph v. Randolph, 3 Rand. 490. judgment having been rendered against a surety in an obligation, he gave a forthcoming bond, which was forfeited. After many years he paid this bond, and then moved against his principal. The motion was resisted on the ground that the forthcoming bond, when forfeited, satisfied the original judgment; that the surety’s right of action then accrued, and that it was now barred by the lapse of time. The court held, that though the forfeited forthcoming bond arrested all proceedings on the judgment whilst it remained in force, it did not amount to an actual payment or satisfaction of the debt, so as to bar an action against the other obligors. In Smith &c. v. Triplett &c. 4 Leigh 590. the assignee of a note obtained judgment against the obligor, who gave a forthcoming bond, upon which execution was awarded ; and the obligors proved insolvent. This was held not to be such a satisfaction as precluded the assignee from resorting to his assignor. There the bond was not defective on its face. By the original judgment, the instrument assigned w’as merged in a higher security ; and if this security was satisfied, either by the forfeited forthcoming bond or the proceedings under it, upon what ground could the assignor be held responsible ?
There is but one serious objection to this construction of the law. Where there is an execution against two defendants, bearing towards each other the relation of principal and surety, and the execution is levied on property of the principal sufficient to pay the debt, the surety, if the property were sold, would be relieved. But if a forthcoming Bond be executed, and the surety therein, though sufficient when taken, afterwards become insolvent, to hold that the creditor may be permitted to resort to the original judgment, would be to subject the original surety to a loss. To this it may be answered that the surety was guilty of the first default. *566 Contracts are made not with a view to their breach, hut to their fulfilment. Having engaged to pay the debt, he was bound to comply with his undertaking. His failure to perform his obligation has driven the cred¡tor to the judicial tribunals for redress. If, in the due and regular prosecution of his claim, injury is inflicted on the surety by the operation of law and the act of the principal, over which the creditor could exercise no control, the creditor should not suffer. And as between the two, equally innocent as respects the particular transaction, he should bear the burthen whose original default has resulted in the special injury.
If then the other defendants are still ultimately liable on the judgment, in the event of the insolvency of the obligors in the delivery bond, as I think they are, it becomes necessary to enquire for what the surety in the forthcoming bond is liable. The act provides that if the owner of the goods and chattels taken shall give sufficient security to the sheriff to have them forthcoming on the day of sale, it shall be lawful for the sheriff to take a bond payable to the creditor, reciting 'the service of the execution, and the amount due thereon, with condition to have the goods forthcoming &c.. and then provides that if the owner fails to deliver the goods or to pay the money mentioned in the,execution, the bond is to be returned to the office and have the effect of a judgment. The bond, until forfeited, is part of the execution, collateral to the payment of the debt, and a forfeiture may be saved by a delivery of the goods. It may therefore, in this view, be considered not as a security for the payment of the debt, but for an independent act, the delivery of the property alone. But all the provisions of the law must be adverted to for the purpose of ascertaining the true character of the surety’s undertaking. The bond is a statutory bond, and its operation must be determined by reference to the law under which it was taken. The law requires that *567 the bond shall recite the service of the execution, and the amount due thereon ; obviously for the purpose of fixing the extent of the surety’s liability. He cannot discharge himself by paying the value of the property to be delivered, if that is less than the amount of the execution. The forfeiture is saved, either by a delivery of the property, or the payment of the money due on the execution. If the value of the property, therefore, exceeds the amount due, a breach of the condition is saved by paying that amount. And execution is to be awarded not for the value of the property, to be ascertained by a jury or in any other way, but for the amount of the execution as recited in the bond. All these provisions shew that the surety, though he may discharge himself by delivering the property before forfeiture, also undertakes for the debt in the event of a failure to deliver the property. His undertaking bears a double aspect, and the alternative is with him, not the creditor. If he chooses to deliver the property, he is discharged ; having elected to do that which constitutes his undertaking collateral to the payment of the debt. Failing to deliver, he elects the other alternative which his undertaking embraced, the payment of the debt. In entering into the bond, therefore, be becomes (as it seems to me) a surety for the debt, with the power to relieve himself from that liability by doing another act within the period prescribed. If this be the true character of his undertaking, and if, as I have before attempted to shew, all the original defendants continue ultimately responsible until the actual payment, notwithstanding the intermediate execution and forfeiture of the forthcoming bond, then it follows that such a defendant is not sufficient security. He is already bound for the debt, and continues so bound until discharged by actual satisfaction of the judgment. He cannot therefore be considered as sufficient security, or security in any sense, for that for which he already stands *568 bound by the judgment; and the sheriff is not war- , . .... ranted in receiving him.
I therefore think, that as the evidence demurred to in this case proves that the surety in the forthcoming bond waga defendant in the original judgment, that evidence supports the issue charging the sheriff with a breach of duty in taking him as security; that whether he was sufficient in point of estate or not, in point of law he was no security.
To sustain the issue on the part of the plaintiff, it was incumbent on him to prove that Garland was sheriff on the 23d of May 1818, that the bond sued on covered his transactions for that year, and that Harrison, who levied the execution, was his deputy. The plaintiff offered in evidence an order shewing the qualification of Garland, as sheriff, under a commission from Linah Mims lieutenant governor, and also an order shewing the qualification of Harrison as his deputy. These orders are copied into the record without their dates, but I clo not think the imperfection of the record in this respect material. The plaintiff also offered the official bond of Garland,, executed at September court 1S17. The condition recites that Garland was appointed sheriff by commission from the governor; and under that commission the bond was taken. This, therefore, must have been the bond given for the second year. And it seems from the evidence, and the returns of his deputy Harrison on process, that under this second commission he continued in office until November 1818. There is no conflict in the evidence in reference to this point; and the orders, bond, and returns on the process clearly establish that Garland was the sheriff, and Harrison his acting deputy, during the period referred to.
The defendants in their fourth plea alleged that the debt was lost by the negligence of the creditor. In the view already taken of the rights and duties of the respective parties, as growing out of the forthcoming *569 bond, I have attempted to shew that the creditor has not the absolute right to quash the bond, where it is not defective on its face, and has been regularly taken. If, however, the codefendant in the original judgment was not a legal security, the bond might have been quashed for this defect, and the creditor, besides his remedy against the sheriff, would have been at once remitted to his original judgment. He elected to pursue the bond. Of this the sheriff could not complain, unless the debt was afterwards lost by the negligence or misconduct of the creditor. The defendants have introduced evidence tending to prove that there was property of Leroy Camden, on which the sheriff might have levied, and that he was arrested by the improper interference of the creditor. The only interference consisted in the written memorandum given by Lynch to Leroy Camden on the 10th of November 1818, four days before the sheriff went out of office. It does not appear that this memorandum ever came to the sheriff’s bands; and though, as against the demurrant, a jury might fairly have inferred that it did, as it was produced in evidence by the defendants, yet the memoradum did not warrant the sheriff in failing to levy ; it merely authorized him to permit the property on which he might levy to remain in the possession of Leroy Camden until the succeeding monday. This, it seems to me, did not justify the sheriff in omitting entirely to levy. He had already incurred a liability by taking improper security in the forthcoming bond. For his own protection, it was his duty at least to levy the execution, if there was a sufficiency of property; and then, if loss ensued in consequence of this interference of the creditor, it must have been borne by him. The facts fairly deducible from this evidence do not, as it seems to me, make out a bar to the action. They tend to prove that part of the debt might possibly have been made, and therefore were proper for the consideration of the jury in assess *570 ing the damages, but do not defeat the plaintiff’s ac- . tloru
The second breach avers the delivery of the execution on the forthcoming bond against Leroy Camden to tbe sheriff, and that the sheriff could have levied the execution on sufficient property of Leroy Camden to satisfy it, but failed and refused to levy the same. The execution referred to was returned “Not time to execute.” The breach is imperfectly assigned, and it is somewhat doubtful whether it was intended to aver that the defendant had sufficient property upon which the sheriff might have levied, or that he received the execution in time to levy the same. If the former was intended, the record presents the parties as relying on the same evidence; the sheriff, as proving that there was property sufficient to have satisfied the debt, if the creditor had been diligent; and the creditor, as establishing the same fact, to prove misconduct in the sheriff. Looking at the breach in connexion with the execution set out and the return, it seems to have been intended to put in issue the truth of the return, and to aver that the execution came to the sheriff’s hands in time to levy it. So considering it, the evidence, it seems to me, does not prove the issue. The execution is dated the 5th of October 1818 ; but there is no proof shewing when it was delivered to the sheriff, or returned. ' It seems that other executions against the same defendant, dated afterwards, did come to the sheriff’s hands, and were levied before the return day of the one in question; and the clerk proves that the sheriff was in the habit of calling at the office and taking out executions. I do not think this sufficient, in opposition to the return of a sworn officer, to prove the return false. The affirmative was with the plaintiff, and he demurs. He might and should have proved when the execution was' delivered. The jury would not have been justified in inferring from the evidence *571 adduced that such delivery was in time, against the return; and the plaintiff cannot, by demurring, deprive the defendants of the benefit of it. According to the well established rule, he is to be considered as waiving all his evidence which conflicts with that of the defendants.
No evidence was given to sustain the issue on the third breach. The law being, as I conceive, for the plaintiff on the facts, as proving the issue made under the first breach, if the case stopped here, the plaintiff would be entitled to an affirmance of the judgment. But after the demurrer to evidence was joined, (the court having ruled the defendants to do so,) the plaintiff’s counsel tendered a conditional verdict for the amount of the debt: the defendants objected, contending that the quantum of damages was a question to be decided by the jury, and insisted on submitting the evidence to the jury; but the court was of opinion that, from the pleadings, the plaintiff must recover the amount of his debt, or nothing, and that said evidence could not be urged before the jury in mitigation of damages; and thereupon the jury signed the verdict. To this decision the defendants excepted. This was an action on the official bond, against the sheriff and his sureties; and the case of Perkins and others v. Giles governor, 9 Leigh 397. decides, that in such an action the recovery is confined to the damages sustained, and these may amount to the debt, or may amount to less. The sheriff having levied, and having released the goods by taking a defective bond, might, if, the debt were lost in consequence of this discharge, be made liable for the whole. But even in an action on the case against him alone, the recovery would be limited to the amount of the injury sustained. In this case, the creditor having proceeded on the bond, it was competent to shew that the debt, or part of it, was made, or that the debt, or a portion of it, might have been collected if the creditor *572 had not interfered, or that loss has resulted from his culpable neglect. Such evidence would be proper for the consideration of the jury on the question of damages. The only points submitted to the decision of the court Up0n the demurrer were, that the facts shew a cause of action against the sheriff, and do not shew that the debt was lost through the negligence of the creditor. The plaintiff was therefore entitled to a recovery; but the extent of that recovery must depend on the evidence as to the injury sustained. This the jury may hear and consider in assessing the damages. It may be entitled to little weight; but of this the jury are the exclusive judges, and the plaintiff cannot, by demurring, deprive the defendants of the benefit of it. The opinion of the court took from the jury all discretion, and fixed the damages at the amount of the debt. In this, and in excluding the testimony offered from the consideration of the jury on the quantum of damages, it seems to me the court erred; and for this cause the judgment should be reversed, the verdict set aside, and a new writ of enquiry awarded.
The ptherjudges concurred. And the president stated that he was authorized by judge Broolce to say, that if present he would also have concurred.
Judgment reversed.