Daniel, J.
delivered the opinion of the Court.
This Court is of opinion that the County Court of Amelia did not commit any error in refusing, at the December session 1840, to continue the cause at the instance of the appellees. It does not deem it necessary to decide whether it would have been competent for the company, on the trial of the cause, to introduce members of the jury to prove that they had, whilst engaged in ascertaining the damages, been led into a mistake by the agent of the company, as to the height of the dam ; inasmuch as there is nothing in the record from which it appears, or can be inferred, that such mistake probably had any influence on the minds of the jury in determining the amount of damage sustained by the appellant, by the erection of the dam. The inquest was taken after the erection of the dam ; and the jury upon their own inspection, assessed the damages sustained by the appellant in consequence of injury to his lands by the overflowing of the waters of the stream. In an effort to set aside the inquest on the ground of a mistake in the jurors in a matter of fact, it would have been incumbent on the company to prove that such mistake was of a character at least, likely to have had weight with the jury in making up their verdict, and in a motion for a continuance of the cause, founded on the absence of witnesses by whom the company alleged they expected to prove the mistake, the Court had necessarily to decide, not only on the competency, but the probable materiality of the testimony. As it is not made to appear that such testimony was at all material, *340 this Court cannot undertake to say that the company was in anY degree injured by the absence of their witnesses.
This Court is also of opinion, that the writ of ad qU0Cj, damnum was properly sued out at the instance of i l j the appellant. The proceedings in this case were had under an act of Assembly for the improvement of the Appomattox river, passed the 23d February 1835, and entitled “an act to authorize the Upper Appomattox Company to enlarge their capital stock, and for other purposes.” Sessions Acts 1834-5, page 82. The 8th section of the act provides, that the company, before they shall erect any dam across the said river, if they cannot agree with the proprietor or proprietors of the lands necessary for the abutments, or which may be probably damaged or affected, shall make application to the Court of the county wherein the lands are, for a writ of ad quod damnum, which Court shall, thereupon, order the writ, requiring the proper officer to summon a jury to meet upon the lands required for the abutment, or which may be probably damaged. The jury, upon a view of the lands required for the abutments, are to locate by metes and bounds, what may be necessary therefor, and to appraise the same according to its true value; to examine the lands above and below, which may be probably damaged or overflowed; to say of what damage it will be to such proprietors; to say whether the health of any person or persons will be annoyed by the stagnation of the waters, and to specify who will probably sustain such injury, and the probable damages thus arising. The inquest is to be returned to Court and entered of record; and the company on paying to those entitled, the value of the lands located for the abutments, and the damages assessed and costs of the inquest, shall become seized in fee simple of the lands used for the abutments, and authorized to erect the dams.
*341 The 9th section provides, that if any proprietor shall sustain any damage from injury to lands or loss of health by reason of the erection of the dams, which has not been foreseen, estimated and satisfied, such proprietor may, upon application to the County Court, after giving ten days notice to the company, obtain a writ of ad quod damnum, in which writ the clerk, by order of the Court, is to specify the injury. The writ is to be directed, executed and returned, as before directed in the 8th section. The jury are to enquire of and assess the damages, and the proprietor suing out the writ is to have judgment against the company for his damages assessed and costs.
By the 8th section, it was the object of the Legislature to provide a cheap and summary mode, in advance of the erection of the dams, for the ascertainment and assessment of all the damages likely to flow therefrom; and by the 9th, to provide a like summary mode of ascertaining and assessing all the damages, which, after the erection of the dams, might be found to result therefrom, and which were not foreseen and estimated before. The 8th section confers upon the company the right and makes it their duty to embrace in the writ of ad quod damnum all the proprietors who may probably sustain detriment from the erection of the dams. If the company fail to embrace in the writ sued out at their instance, any of such proprietors, or if it fail to sue out any writ, in neither event have the proprietors any right to commence proceedings under the provisions of the 8th section. Prior to the erection of the dam, that right appertains exclusively to the company. The right of the proprietors to commence 'proceedings does not arise till after the erection of the dams; and is secured by the 9th section. If under a writ sued out at the instance of the company the damages of certain of the proprietors are assessed; and after the erection of the dams, such proprietors are found to sustain fur *342 ther damages not foreseen and estimated in the inquest • had-under such writ, such cases would come clearly within the provisions of the 9th section. So if the company, in suing out their writ, should wholly pretersome of the proprietors whose lands would probar r L bly be injured, in such cases also, it is plain that such pretermitted proprietors would, after the erection of the dam, have a right to the writ: Nor is any good reason perceived why the remedy given by the 9th section should be confined to these two classes of cases. There is nothing in the terms of the act requiring us to give to it such a construction as would exclude from its operation the cases where the company, having agreed with the proprietors of the lands owning the abutments, should fail to sue out any writ for assessing the damages to the lands of the proprietors above. The 9th section was intended as a counterpart to the 8th; and with the exception of the provisions relating to the abutments, is co-extensive with it; giving the remedy therein provided, not only to the proprietors whose damages may have been assessed under a writ sued out by the company, and who assert a claim after the erection of the dams, for unforeseen damages, but also to those who may have been omitted in such writ, and still further to all the proprietors, where the company may have failed to sue out any writ. To construe the act otherwise, and hold it as applying only to the two first mentioned classes of cases, would be to leave it entirely in the power of the company, by failing to issue any writ, to drive all the proprietors to their actions; whilst the manifest object of the Legislature was, that none of them should be compelled -to resort to the expense and delays attendant upon the ordinary suits.
The 9th section, as before stated, requires the County Court to order the clerk to specify in the writ of ad qtiod damnum, the nature of the injury complained of; but this Court is of opinion that there is no such failure *343 to do so, as gives to the appellee any just cause of complaint. If there had been an inquisition in the case of the appellant’s lands, before the erection of the dam, it would have been proper, and perhaps necessary, so to frame the writ sued out at his instance, after the erection of the dam, as to shew that the damages to be estimated, had not been previously estimated; and also to specify the injuries, in order that the jury might be confined in their enquiry, to the subjects proper for their inquisition ; and the company saved from the hazard of being subjected to the payment again, of damages already satisfied. But in this case there had been no previous writ. All the damages, therefore, that it would have been proper for a jury to enquire of and assess, under a writ sued out by the company, it was proper for the jury in this case to enquire of and assess, under the writ sued out by Nash. The writ, therefore, properly assumed the form that would have been proper for one sued out, previously to the erection of the dam.
The Court is also of opinion, that it was not necessary, either in the writ or the inquest, that the land injured should have been set out by metes and bounds; or that there should have been any more exact specification of the injuries complained of, and for which damages were assessed, than has been observed. In order to ensure that certainty and completeness, which it is desirable should be found in the proofs to be furnished by the records of judicial proceedings, it would perhaps have been well, if the Legislature had required that the writ, inquisition and judgment should so particularize the injuries complained of, as that, in any subsequent controversy between the parties, there would be no difficulty in ascertaining, by a reference to them, the identity of the subjects embraced, or intended to be embraced, by them. In the absence of such provisions, there is no propriety in holding the parties to the observance of any greater precision in the specifications of *344 the injuries, in the proceedings under review, than would have been deemed sufficient in the proceedings of an action at law brought by the proprietor to recover damages. In such action it would be no good cause of objection to the declaration or to the verdict, that there ° 1 was a failure in either to set out the lands injured, by metes and bounds, or to specify with any great degree of particularity the injuries sustained by the proprietor. The want of precision and exactness in the pleadings and proceedings, would in such case be more likely to result in inconvenience to the plaintiff than to the defendant. The judgment would be a conclusive bar to any further suit for damages that could, by fair construction, be regarded as embraced in such declaration and verdict; and in any new action claiming further compensation, it would be incumbent on the plaintiff to shew that it had not been already awarded to him. So here, if Nash should hereafter issue another writ, he could not recover without first shewing that the damages claimed in it were not foreseen and estimated in the inquest, in this case.
The writ in this case directs the jury to view the lands of the proprietor, which may probably be damaged or overflowed; and to say what damage it will be of to the said proprietor; to say whether, in their opinion, the health of any person will be materially annoyed by the stagnation of the waters; to specify such injury, and the probable damages thus arising. And in the inquest the jurors say, that the damages sustained by Nash, in consequence of injury to his lands by the overflowing of the waters of the river, produced by the erection of the dam, and which said damages have not been heretofore foreseen, estimated and satisfied, is six hundred dollars. And they further find, that Nash has sustained no damage from loss of health, occasioned by the erection of said dam. Here is all the certainty that would have been required in the writ, declaration and *345 verdict in an action of trespass or case brought by Nash i for the recovery of damages; and the Court does not feel called upon to subject the proceedings in this case to a more rigid scrutiny, or a harsher criticism than it would have been proper to apply to the like proceedings in the supposed action just mentioned.
This Court is therefore of opinion, that the County Court did not err in giving judgment for the appellant on the inquest for the damages therein assessed; and, consequently, that the judgment of the Circuit Court reversing the same, is erroneous. This Court doth therefore reverse the judgment of the said Circuit Court with costs ; and proceeding to give such judgment as it ought to have rendered, doth affirm that of the County Court, with costs and damages according to law.
The judgment of the County Court not bearing interest, the judgment of this Court was for damages at the rate of six per centum per annum, from the 1st of April 1841, the date of the judgment of the Circuit Court reversing that of the County Court, to the time when a copy of this judgment should be delivered to the clerk of the Circuit Court.