BAUD WIN, J.,
delivered the opinion of the Court.
It seems to the Court that by the express, provision of the 9th section of the statute concerning mills, &c., 2 Rev. Code, p. 222, no inquest taken by virtue of that act, and no opinion or judgment of the Court thereupon is a bar to any action which could have been had or maintained if the said act had never been made, other than actions for such injuries as were actually foreseen and estimated upon such inquest t And therefore, and inasmuch as the inquest in the record set forth, finds that no person will be injured by the erection of the dam therein mentioned, that the plaintiff in this, action, who was no party to the proceedings, in which said inquest was had, is not thereby barred from the recovery of such damages as he may have sustained by the reflow of the water upon his land, occasioned by such dam.
*And it further seems to the Court, that inasmuch as the said dam, and the mill to which it pertains, were established upon the application of William B. Calhoun and James W. Calhoun, as the owners of the land upon which the same are situate, and the defendant in this action asserts in his defence the regularity of the proceedings by which said mill and dam were established, and claims the protection thereof under the title derived by him from the said applicants, it is not competent for him to deny the ownership of the said land by the said applicants at the time of said proceedings, or to assert the continued ownership thereof by the plaintiff, from whose conveyance to said applicants they derived their title.
It further seems to the Court, that the record of the proceedings by which said mill and dam were established, cannot be aided or supplied by parol evidence of what passed before the jury at the time of their inquisition, for the purpose of shewing that the plaintiff assented to the establishment of said dam at the height fixed by the jury, and thereby renounced any claim which he might thereafter have for damages unfore *451 seen and unestimated by the jury; and that although the plaintiff may have attended the inquisition of the jury, and given them information as to the height to which it would be proper the applicants should have leave to erect their dam, and expressed to them his opinion and belief founded upon observation and actual level-ling, that a dam twelve feet high would not back the water upon the lands of any person but himself, and that as to himself he was satisfied that he would not thereby be injured ; still that such conduct and declarations of the plaintiff would only serve to shew that any injury thereafter actually occasioned him by said dam was not foreseen and estimated by himself any more than by the said jury; and that such conduct and declarations of the plaintiff cannot be treated as a contract with *said applicants giving them leave to erect such dam and thereby occasion injury to the plaintiff; for as a contract so far as it allowed them to erect a dam upon their own land, it would be idle and nugatory, and so far as it authorized them to injure the plaintiff by backing the water upon his land, it was voluntary, executory and personal to the said applicants, amounting at most to nothing more than a parol license to them, indeterminate in point of time, and revocable at the pleasure of the plaintiff.
And it further seems to the Court, that if, as the evidence at the trial tended to prove, the said William B. and James W. Calhoun complied with the condition imposed by the statute, requiring such applicants to begin to build their mill and dam within one year, and finish the same within three years after the leave of the Court obtained, so as to be in good condition for the public use, but that the height to which the dam was so finished by them was not greater than about nine or ten feet, yet that their so stopping short of the full height fixed by the inquest aforesaid, did not have the effect of precluding them, or their assignees, from afterwards raising the said'dam to the full height of twelve feet allowed by the inquest, provided by so doing they should not occasion injury to others.
And it further seems to the Court, that if, as there was evidence at the trial tending to prove, after the mill was finished and in operation, and when the dam was at the height of about nine or ten feet, the said William B. and James W. Calhoun desired to ra.ise the latter somewhat higher, and did so by placing boards on the top to the height of several inches, which was done without consulting the plaintiff, who however soon discovered it, and complained that he was injured by such elevation, and required them to pull it down, and they being satisfied upon examination that the plaintiff was really thereby injured, consented, and took *off the increased height, then that this was a revocation of any such parol license as above supposed.
And it further seems to the Court, that if, as the evidence at the trial tended to prove, the said dam was erected, and finished by the said William B. and James W. Calhoun as above mentioned only to the height of about nine or ten feet, at which height it was not complained of but acquiesced in by the plaintiff, until their sale and conveyance of the property on which it is situate, to the defendant in the year 1844, and was standing at that height at the time of such sale and conveyance, then that inasmuch as the plaintiff united in said sale and conveyance, the said dam as of that height must be considered as passing to the defendant by the terms and true intent and meaning of the deed of conveyance, and the plaintiff cannot recover damages against the defendant for any injury done him by any reflow of the water to the extent to which it existed at the time of said sale and conveyance; this Court expressing no opinion as to any injury from the reflow of the water, not existing at that time; the declaration onljr claiming the damages occasioned by the defendant’s raising the dam since his purchase.
And it further seems to the Court, that the instructions and opinions of the Circuit court at the trial, so far as the same conflict with the principles above declared, are erroneous. It is therefore considered that the said judgment of the Circuit court be reversed and annulled, and the verdict of the jury set aside with costs to the plaintiff in error; and the cause is remanded to the Circuit court for a new trial of the issue between the parties; which new trial is to be governed; so far as applicable, by the principles above declared.
MILLS AND niLLDAMS.
I. J urisdiction.
II. Erection of Mills.
III. Rights of Mill Owner.
1. In General.
2. Source of Authority.
a. Legislative and Judicial.
b. Prescription.
8.In Floatable Streams.
4.To TJse of Water.
IV. Grants of Privileges.
1. Construction.
2. Effect.
V. Procedure.
1. Process.
2. The Application.
8. Issues.
4. The Inquisition.
a. In General.
b. Finding of Jury.
c. Sufficiency.
d. When Set Aside.
5. Evidence.
a. In General.
b. Competency.
c. Admissibility.
d. Weight.
6. Plea and Replication.
7. Verdict.
8. Judgment.
9. Appeals.
10. Revival and Removal.
11. Record.
*452 VI. Damages.
VII. Criminal Prosecutions.
Cross References to Monographic Notes.
Constitutional Law.
Eminent Domain.
1. JURISDICTION.
Suit Brought Where Mill is Located. — An act of the assembly authorizing a canal company to sell its property and franchises to a railroad company, and providing that the circuit court of Richmond shall have exclusive jurisdiction over all suits in regard to the contract of sale, does not require that an action by a mill owner against a successor of the latter company, for the diversion of water by a canal, required to be maintained by such act, be brought in the circuit court of Richmond, but it may be properly instituted in the county where the mill is situated. Ches., etc., R. Co. v. Rison, 99 Va. 18, 37 S. E. Rep. 320.
Oí County and Corporation Courts at Quarterly and Monthly Terms. — The county or corporation courts at quarterly terms may in their discretion decide upon controversies concerning mills; but at a monthly session they cannot take jurisdiction of any case expressly and exclusively assigned to the quarterly term. Wilkinson v. Mayo, 3 H. & M. 565.
No Power to Condemn Land for Race. — It was held in Coalter v. Hunter, 4 Rand. 58, that the law gave the court no power to condemn lands for a tail-race to a mill.
In Equity — To Settle Relative Water Rights. — Where the owners of two mills have the use of the same stream of water, and become involved in a controversy as to their relative rights to the same, the case is one for the equitable jurisdiction of a court, and it should proceed to ascertain, define and settle the rights of the parties to the use of the water power. Hanna v. Clarke, 31 Gratt. 36, 1 Va. Dec. 338, Va. Law Jr. 1879, p. 103.
Same — Removal of Dam — Inadequate Damages.— Whre a suit is brought against a mill owner to abate his dam as a nuisance, the inadequacy of the damages, which the jury could give a mill owner for the loss and injury sustained by him in the removal of his dam, is a good ground for the interposition of equity. Thus where a milldam is attempted to be abated as a nuisance because it obstructs. navigation, and such abatement would produce great loss to the owner of the mill, and great inconvenience to the public, equity has jurisdiction to prevent such abatement, and to preserve to the owner his establishment, until the question of his rights to keep up his dam has been decided. Crenshaw v. Slate River Co., 6 Rand. 245.
Same — To Enjoin Rebuilding of Dam. — A mill and milldam were erected according to the statute concerning mills. The stagnation of water injured the health of the neighborhood, and one of the parties injured brought an action and recovered damages. Subsequently the milldam was washed away. While the mill owners were proceeding to rebuild, proposing certain expedie uts to prevent a repetition of these injuries, it was proper for a court of equity at the suit of the previous plaintiff at law to enjoin the rebuilding of the dam, unless the expedients proposed appeared effectual, which should have been ascertained by a jury. Miller v. Trueheart, 4 Leigh 569.
Same — Same—Necessary Allegations. — Two verdicts were rendered in favor of a party, whose land was overflowed, against the owner of a mill, for keeping his dam too high. The dam being swept away, an injunction was asked to prevent the owner of the mill from rebuilding, alleging that he had not begun within the prescribed time, and that irreparable mischief would result. It appeared that the mill and dam had existed more than fifty years, but it did not appear that there was ever any order of court granting leave to build. It was held that the verdicts showed that the owner had a prescriptive right to keep the dam to some height, that they did not warrant an injunction, unless it appeared that he was about to build it beyond the authorized height; and that if it was competent for a court of equity to enforce a forfeiture, because of the lapse of the prescribed time in which he might rebuild, it could not be done by way of injunction, in the absence of an allegation of some sufficient and distinct ground of irreparable mischief. Talley v. Tyree, 2 Rob. 500.
II. ERECTION OF MILLS.
Strict Compliance with Authority Necessary. — The owner of an island in the Appomattox river obtained leave of court to build a mill on his island, and to condemn an acre of land on the main for an abutment for his dam. He placed the abutment on the condemned land, but did not build his mill on the island, but on the main, lower down, with the consent of the owner. It was held in Stokes v. Upper Appomattox Co., 3 Leigh 318, that the mill was not established according to law, and that the mill owner and those claiming under him had no right to the water power of the stream., as against the public right of navigation, and an incorporated company to improve the navigation.
What Proceeding Proper When Petitioner Owns One Side of Stream. — Where the petitioner for leave to build a mill owns land on only one side of the stream, the proceedings should be under §§ 1, 2j 3, of ch. 235, 2 Rev. Code, and if the petitioner proceeds under § 4, the writ and inquisition should be quashed. Whitworth v. Puckett, 2 Gratt. 528.
Mill Rebuilt — Construction of Statute. — A mill which had been built, and had gone down, prior to the statute, 2 Rev. Code ch. 235, § 10, and which was rebuilt after the passage of that statute in 1819, is not a mill “thereafter built,” within the meaning of the statute. Webb v. Com., 2 Leigh 721.
Condemnation of Land for Abutment of Dams. — It was held in Nash v. Upper Appomattox Co., 5 Gratt. 332, that the 9th section of the Act of 1834-35, p. 82, which was in regard to the condemnation of land by the defendant company necessary for the abutments of dams, embraced the case of a proprietor, whose land was injured by the erection of a dam across the river, to condemn the abutments of which dam no writ of ad quod damnum had been sued out by the defendants, they having agreed with the proprietors of the land owning the abutment.
III. RIGHTS OF HILL OWNER.
1. IN GENERAL.
Not Entitled to Land Overflowed on Payment of Damages, — The applicant for leave to build a mill is not entitled to the ownership of the land overflowed by the erection of a dam, upon paying the damages assessed by the jury. Whitworth v. Puckett, 2 Gratt. 528.
Failure to Erect Dam to Authorized Height — No Estoppel in Absence of Injury. — Where an inquest in a mill case authorizes the applicant to build a dam to a certain height, the fact that he did not in the first instance raise it to the authorized height, does not *453 preclude him from raising it to the full height authorized, provided, in doing so he does not injure others. Calhoun v. Palmer, 8 Gratt 88.
Estoppel of Subsequent Purchaser to Deny Title of Grantor. — Where a subsequent purchaser of a mill and dam relies upon the inquest and judgment of the court in authorizing the dam, as a defence to an action for damages caused by increasing the height of the dam, it is not competent for him to deny the ownership of the prior owner at the time of the proceedings, or to assert the continued ownership of the land by the plaintiff. Calhoun v. Palmer, 8 Gratt. 88.
2. SOURCE OP AUTHORITY.
a. Legislative and Judicial.
Legislature May Confer Paramount Right on Individuals. — Although the public has a right to the use of streams and rivers for the purposes of navigation. yet the legislature by general law or particular grants may confer upon individuals rights in opposition to this public right. The general law authorizing courts to establish mills has conferred such paramount rights on owners of mills. Crenshaw v. Slate River Co., 6 Rand. 245.
Dam Erected by Authority of Court on Floatable Stream is No Nuisance. — if a county court gives authority for the erection of a dam on a floatable stream for the purpose of furnishing water power for the operation of a mill for the use of the public, such dam is not a public nuisance, although it is without sluices and flood gates and obstructs navigation. So a railroad company which inflicts injury upon a mill by an unlawful act cannot justify its wrong upon the plea that such dam is a public nuisance. Watts v. Norfolk, etc., R. Co., 39 W. Va. 196, 19 S. E. Rep. 521, 45 Am. St. Rep. 894. Compare Gaston v. Mace, 33 W. Va. 14, 10 S. E. Rep. 60, 25 Am. St. Rep. 848.
b. Pbesokiption.
Public Rights Not Affected. — A riparian proprietor is not given any prescriptive right to maintain his dam across a floatable stream by lapse of time, as against the public, though it might give him the right to maintain such dam as against another riparian owner. Gaston v. Mace, 33 W. Va. 14, 10 S. E. Rep. 60, 25 Am. St. Rep. 848.
Twenty Years’ Use Not Conclusive — Rebuttal.—The fact that a dam was built in 1824, and that from that time the owner and those claiming under him have claimed and held possession and use thereof, and of the water power afforded thereby, and used in working the mill for which it was built, adversely and uninterruptedly for twenty years, is not conclusive of the right of the defendant to continue said possession and use of said mill and dam ; it is only presumptive and may be rebutted by circumstances. Field v. Brown, 24 Gratt. 74.
3. IN FLOATABLE STREAMS.
Hay Build on Own Property without Order of Court. --Although a stream is floatable, a riparian proprietor may erect a mill and dam under his right of dominion over his own property without an order of court. Watts v. Norfolk, etc., R. Co., 39 W. Va. 196, 19 S. E. Rep. 521, 45 Am. St. Rep. 894.
Subservient to Public Right to Float Logs, etc. — A riparian proprietor of a floatable stream has the right to maintain and construct a dam, and to use the water for his mill, but in a way consistent with the public right to float logs on it. Thus the maintenance of a dam across a floatable stream, so as to prejudice the right of the public to float logs | therein, and without providing suitable sluices to \ allow logs to pass around the dam, is a public nuisance. Gaston v. Mace, 33 W. Va. 14. 10 S. E. Rep. 60, 25 Am. St. Rep. 848. Compare Watts v. Norfolk, etc., R. Co., 39 W. Va. 196, 19 S. E. Rep. 521, 45 Am. St. Rep. 894.
Thus there can be no recovery for the destruction of a dam across a floatable stream by logs placed therein, as the land owner has no right to interfere with the public in the floating of logs and other products down the stream. Gaston v. Mace. 33 W. Va. 14, 10 S. E. Rep. 60, 25 Am. St. Rep. 848.
4.TO USE OF WATER.
Rights of Prior Owner. — Where the prior owner of a dam across a stream only backs the water to the extent which is necessary for the operation of his mill, and does not pollute or divert the water, it is an error to perpetually enjoin him at the suit of a lower proprietor of a dam, from entirely cutting off or diminishing the natural flow of the stream, so that the plaintiff shall not at all times have a reasonable supply of water therefrom. Mumpower v. City of Bristol, 90 Va. 151, 17 S. E. Rep. 853.
Of Different Owners in Same Water Power — Preference in Use. — For a great many years a gristmill and a sawmill, owned by separate parties, were propelled by water power taken from the same dam. When the water was insúiñcient to run both, the gristmill had the preference in its use. The gristmill was subsequently sold, with all its privileges, and the owners changed it into a papermill, and changed the character of the wheels, which required that the water should be taken on a higher level. On a bill of inj unction filed against the owner of the sawmill, it was held that the relative rights of the proprietors of the two mills, with respect to the water powers, continued the same after the sale of the gristmill as they were before ; and that after the sale the owners were entitled to convert it into a papermill, and to the same priority in the use of the water for its operation, to the same extent to which they were previously entitled for the operation of the gristmill, but to no greater extent. Hanna v. Clarke, 31 Gratt. 36, 1 Va. Dec. 338, Va. Law Jr. 1879, p. 103.
IV. GRANTS OF PRIVILEGES.
1. CONSTRUCTION.
Below Established Hills. — The grant of water privileges below established mills will be so construed as to preserve the water power of such mills undisturbed, unless a contrary intent plainly appears from a reasonable construction of the instrument conveying the grant. Miller v. Shenandoah Pulp Co., 38 w. Va. 558, 18 S. E. Rep. 740.
So when the privilege of turning the waters of a river down a canal has been given a mill owner, such privilege does not carry with it the right to dam the waters back by head gates or in any other manner, so as to destroy the water power of mills already established. Miller v. Shen. Pulp. Co., 38 W. Va. 558, 18 S. E. Rep. 740. See Humes v. Shugart, 10 Leigh 332.
2. EFFECT.
Rights Vested in Grantee. — Mills are considered as great public conveniences and benefits, and are regulated by law. They are never established except on inquisition of a jury, which must inquire whether ordinary navigation will be obstructed, and if they report that it will not, then leave is given to erect the mill. Such grant under such proceedings is a perfect one, and vests in the grantee *454 all the public rights to the stream, or so much thereof as is necessary to the full enjoyment of the mill. Crenshaw v. Slate River Co., 6 Rand. 345.
Of Uniting in Conveyance on Recovery of Damages.— By uniting in the conveyance of mill property, the grantor cannot recover any damages against the grantee for any injury done him by the reflow of water, to the extent that the injury existed at the time of tl\e conveyance. Calhoun v. Palmer, 8 Gratt. 88.
A father gave his son a tract of land on which there was a mill seat, and the latter applied to the county court, to build a mill and dam. At the inquisition the father stated that by erecting a dam twelve feet high, no damages would result to any body but himself, and he did not believe that it would injure him. The jury acted upon these representations, and the son was permitted to build a dam of that height, but he only erected it ten feet high. Tie father and son united in a conveyance of the property to a third party, who as soon as he found out what the inquisition of the jury was, added eight inches to the height of the dam. In a suit by the father to recover damages for the injury resulting from the increase of the height of the dam, it was held that his right to recover was not defeated by his conduct at the inquisition. Calhoun v. Palmer, 8 Gratt. 88.
On Conditions — Court May Allow Time for Compliance. — By an act of assembly a county court was empowered to grant permission to an individual to make a dam across a public highway; but the privilege was conditional on his keeping in his dam a lock or slope in repair for the passage of boats and fish. The county court was tobe the judge of its sufficiency, and was empowered to abate the. dam as a nuisance, if after three months’ notice the lock or slope be adjudged insufficient. On motion of two individuals the dam was abated as a nuisance, because raised higher than authorized, and because of no sufficient lock or slope. The court had power to give the proprietor reasonable time to reduce the dam- to the proper height, and to construct a sufficient slope or lock, white v. King. 5 Leigh 726.
V. PROCEDURE.
1. PROCESS.
Execution by Deputy Sheriff. — The writ of ad quod damnum, which issues upon an application to a court for leave to build a mill, may be' executed by the deputy sheriff. It may be executed by him in all cases, unless the high sheriff is expressly required to act in person. Wroe v. Harris, 2 Wash. 126; Noel v. Sale, 1 Call 495.
Amendment before Judgment. — The court ought to permit the sheriff to amend his return upon a writ of ad quod damnum at any time before judgment is given upon it. Dawson v. Moons, 4 Munf. 535. See Baird v. Rice, 1 Call 18; Bullitt v. Winstons, 1 Munf. 269.
Should Direct Jury to Ascertain Damages Generally. —It was held in Nash v. upper Appomattox Co., 5 Gratt. 332, that where there had been no previous writ of ad quod damnum sued out by the company, to assess the damages sustained by the proprietor of land injured by the erection of a dam, it was proper that the writ sued out by the proprietor should direct the jury to inquire of, and assess the damages sustained by him generally, and not limit it to damages which had not been foreseen, estimated and satisfied.
Statement of Certain Height Where None in Order. — ■ The mentioning in the writ of ad quod dammm of a certain height for the milldam, is no ground for setting aside the proceedings at the instance of the opposite party; notwithstanding no particular height was specified in the order directing the writ. Coleman v. Moody, 4 H. & M. 1.
Defects Waived by Appearance. — An inquisition on a writ of ad quod damnumin a mill case, having found that the lands of a deceased person would be overflowed, and a summons having issued to the executor and trustee of the decedent, to show cause why leave should not be given to erect the mill: and the executor having appeared and contested the motion on its merits, he was precluded from after-wards saying that he was not legally summoned as the tenant or proprietor of the land. Coleman v. Moody, 4 H. & M. 1.
2. THE APPLICATION.
May Be Made Ore Tenus. — A petition for leave to build a mill may be made to the court ore tenus. Mead v. Haynes, 3 Rand. 33. See Mairs v. Gallahue, 9 Gratt. 94.
Must Comply with Statute. — In his application for leave to erect a mill, the petitioner must show that he has proceeded in the mode prescribed by law. Whitworth v. Puckett, 3 Gratt. 528.
What Is a Sufficient Compliance. — The petition states that the applicant desired a writ of ad quod damnum to issue for the purpose of erecting a water gristmill, etc. This is a sufficient compliance with the statute, which says “when any person desiring to build a water gristmill,” etc. The difference is merely verbal and not material, the intention of the parties to build a mill being sufficiently and plainly expressed. Mairs v. Gallahue, 9 Gratt. 94, and foot-note.
Effect of Allegation That Applicant Owns Both Banks. — In a petition for leave to build a dam, the petition, which was ore tenus, stated that the applicant was the owner of the banks on both sides of the stream. This was in effect a statement that he was the owner of the land, especially as it appeared from other parts of the proceedings that he owned the land on both sides of the stream. Mairs v. Gallahue, 9 Gratt. 94.
Navigable Streams — Must Allege Bed in Common» wealth. — It is necessary to state in petitions for mills on navigable rivers, that the bed is in the commonwealth. Martin v. Beverley, 5 Call 444.
Failure to Allege Bed in Petitioner — Sufficient When Otherwise Shown. — A petition for leave to build a mill, where the bed of the stream belongs in part to the petitioner, will be sufficient upon showing that fact, although the petition itself does not state it, but on the contrary states that the bed of the stream belongs to the commonwealth. Mead v. Haynes, 3 Rand. 33.
Petitioner Owning One Side Only— ilust Allege Bed in Himself or Commonwealth. — Where the person applying for leave to build a mill has land on one side only of the stream, it should be stated in the petition that the bed of the stream is in himself, or in the commonwealth. But this is not necessary, if he owns the land on both sides of the stream, wroe v. Harris, 2 Wash 126.
Application Refused When It Would Destroy Hill Already Built. — After a county court has granted leave to one applicant to build a mill, if application be made by another to build a mill lower down the stream, and the first applicant shows that the building of the second dam would destroy the privilege previously granted to him, the court in the exercise *455 of a sound discretion ought to refuse the second application. Humes v Shugart, 10 Leigh 332.
Although leave be given to build a mill, while a prior application to build lower down the stream is still pending, yet as long as the order is unreversed and not appealed from, and it appears that by granting the prior application the privilege would be destroyed, the prior application should be refused. Humes v. Shugart. 10 Leigh 332.
3. ISSUES.
Cannot Try Title to Land. — An applicant for leave to build a mill upon a stream, and a dam across it, owned the lands on both sides of the stream. The inquest found, on ad quod damnum, that lands in the possession of another of a certain value, would be overflowed. The court being of opinion that these lands belonged to the applicant, gave him leave to build his dam without paying the assessed damages. This was an error, as the title to the land could not be thus collaterally tried. Anthony v. Lawhorne, 1 Leigh 1.
In Wood v. Boughan, 1 Call 329, the question was raised whether the court, on a petition for a mill, can try the title of the parties to the lands, without the intervention of a jury. It seemed to the court that the intention of the legislature was not to authorize the court in this summary proceeding to enter into a contest about title. And in this case the directing of the issue in the district court was not considered error, as the case upon the merits was left open for discussion.
Same — Proper Procedure. — The proper procedure in a case where the owner of lands on both sides of a stream petitions for leave to build a mill upon, and a dam across the stream, and the inquest shows that lands, which in the opinion of the court belong to the applicant, in possession of another party will be damaged to a certain amount, is that leave should be given the petitioner to build the mill and dam, only on condition that the applicant pay to the apparent owner the assessed damages. Then the dam might be built, without paying the damages, and the action for them could be defended on the ground that the overflowed land belonged to the owner of the mill, and thus the title would be directly put in issue in a regular way, without any embarrassment. Anthony v. Lawhorne, 1 Leigh 1.
Immaterial Issue. — in an action of trespass for destroyinga milldam, if the defendants plead that the said dam was unlawfully erected by the plain-tii'i, in a ford where a public road crossed the stream, whereby the said road and ford were obstructed, to the great damage and nuisance of the citizens of the commonwealth, and that the defendants in order to abate the nuisance peaceably cut down and removed a part of the dam; and the plaintiff replies that by erecting the dam, he did not entirely obstruct the public road and ford, and the citizens of the commonwealth were not altogether prevented from passing the same; whereupon issue be joined, such issue is immaterial, and after a verdict for the plaintiff, should be set aside, and a repleader directed. Dimmett v. Eshridge, 6 Munf. 308.
4. INQUISITION. — See subsec. 7, “Verdict,'’ infra.
a. IN Gjunkrad.
Same Questions Arise on Application to Raise Dam as on Application to Construct. — On an application to raise a milldam already erected, it is as necessary that an inquest should be had as to injuring the health of neighbors, obstructing navigation, etc., as on an application to construct a milldam originally. Kownslar v. Ward, Gilmer 127.
Proceedings When Improperly Quashed. — If the inquisition in proceedings for leave to build a mill be improperly quashed, the plaintiff should pray a new writ, or except to the opinion of the court. Noel v. Sale, 1 Call 495.
b. Ftndlngs or Jury.
Need Not Set Out Land Injured by Metes and Bounds.
—It is not necessary in a mill case, either in the writ or inquest, that the land injured should be set out by metes and bounds, and the finding in the inquest that the proprietor’s land had been injured by the overflowing of the waters produced by the erection of the dam, and that the damages assessed were on that account, is sufficiently specific. Nash v. Upper Appomattox Co., 5 Gratt. 332.
Not Necessary to Set Out Injury to Land Below Dam. —It is not necessary that the inquisition should set forth the injury, which the land below the dam may sustain. Wroe v. Harris, 2 Wash. 126.
Fatal Omissions. — in a proceeding to raise a mill-dam, the writ required the jury to say what damage would be caused to the neighboring proprietors, as to their mansion houses, offices, curtilages, gardens or orchards; and to inquire into what degree fish of passage and ordinary navigation would be obstructed, and whether the health of the neighborhood would be annoyed by the stagnation of the water. The inquisition of the jury was fatally defective in that it made no particular answer respecting the passage of fish, the obstruction of navigation, and the annoyance of the health of the neighborhood. Eppes v. Cralle, 1 Munf. 258.
When Date Immaterial. — A date to the inquisition, upon a writ of ad quod damnv/rn, is not essential, if it be stated under the hands and seals of the jurors that “in obedience to the annexed writ, they viewed the lands in question.” Dawson v. Moons, 4 Munf. 535.
Proper for Jury to Name Height of Dam Where Order Omits it. — Where the petition or the order of the court directing the writ of ad quod damwmi to issue in a mill case, does not specify the height proposed to be erected, it is proper and correct for the jury to name that height in their inquisition. Mairs v. Gallahue, 9 Gratt. 94.
C. SlOVETClENCY.
Substantially Responsive to Statute. — The inquisition in a mill case is sufficient, where upon a fair and reasonable construction, it is substantially responsive to the requirements of the statute. Mairs v. Gallahue, 9 Gratt. 94, and footnote.
Implication of Other Damages Renders Inquisition Uncertain, — Where the jury, in a mill case, make return of certain damages, which will be caused by raising the dam, and by the uncertain wording of their inquisition, imply that there may be other damages to the parties than those given, the inquisition is defective for uncertainty, and will be set aside. Eppes v. Cralle, 1 Munf. 258.
Finding as to Effect on Health. — in a proceeding before the county court, for leave to build a water gristmill and dam, the inquisition found was “that the health of the neighbors would be less or as little annoyed as it was possible it should be by the erection of any dam.” On objection that this inquisition was insufficient and defective in regard to the effect upon health, it was held that the inquisition was sufficient. Smith v. Waddill, 11 Leigh 532.
d. When Set Aside.
False Statements by Applicant, — if the applicant for leave to build a mill states that he is the owner of the land on both sides of the watercourse, when *456 in fact he is not, the writ of ad mod damnum and inquisition taken upon it, ought to he quashed, Wilkinson v. Mayo, 3 H. & M. 565.
¡lore Land Damaged Than Is Estimated. — If on the hearing- of a mill case, it appears that a greater quantity of land of the adjoining proprietors will he overflowed than is estimated hy the jury, the inquisition should he quashed, and a new writ directed, Whitworth v. Puckett, 2 Gratt. 528.
Jurors Formerly Served in Same Case. — On a petition for leave to huild a mill upon, and place a dam across a watercourse, the writ of ad auod damnum was awarded, and the inquisition of the jury was returned. An interested party was made defendant, ail'd attempted to quash the inquisition on the ground that two of the jurors had formerly served in the same case. Though it appeared the points now in controversy could not have heen at issue on the first inquest, yet it was held that the inquisition should he quashed for that cause. Hunter v. Matthews, 12 Leigh 228.
Variance between Petition and Writ. — The petition in a mill case requested permission to raise the dam "from its present height to fourteen feet and one-half.” The court directed inquiry to he made as to what damages would accrue from raising the dam “six inches higher than the present height," without mentioning what the present height was. The writ was erroneous, and the inquisition taken on such writ erroneous. Eppes v. Cralle, 1 Munf. 258.
Jury Treated by Applicant — Inquisition Valid. — An inquisition in a mill case, ought not to he set aside on the ground that the jurors, before they were sworn and afterwards, when their verdict had heen agreed upon, hut before they had signed it, ate and drank moderately at the expense of the applicant, no corruption appearing, and the opposite party having consented. Coleman v Moody, 4 H. & M. 1.
Statements by Applicant to Jury at Inquisition. — The jury impanelled under a writ of ad auod damnum awarded on an application for leave to build a mill, were apparently unable to agree upon a verdict, when the applicant announced that he would he willing to pay any damages they thought reasonable. A juror asked the applicant in the presence of the sheriff, the remaining jnrors and the persons assembled, if he was willing to pay a certain amount. The applicant replied in the affirmative and the inquisition was completed. Although the owner of the land was not present, this was held not such an interference of the applicant with the jury, as would render it proper to set the inquisition aside. Hunter v. Matthews, 1 Rob. 468.
Statement by Sheriff. — On the trial of a writ of ad mod damnum to erect a milldam, one of the jurors, who signed the inquisition, gave evidence that the sheriff had declared in the presence of himself and another juror, that the defendant had consented to the erection of the milldam, in consequence of which he had agreed to sign the inquisition, this will not he a sufficient reason for quashing the inquisition. Harwell v. Bennett, 1 Rand. 282.
5. EVIDENCE.
a. In General.
Question Tried in Lower Court Proved by Record.— Although in controversies concerning mills, the superior court of law, to which an appeal is taken from the county or corporation court, may hear new evidence upon questions submitted to its revi-sal hy the record, it ought not to receive any evidence, hut that of the record itself, to prove what questions were in fact tried in the court below, Bohn v. Sheppard, 4 Munf. 403.
Instructions. — The plaintiff, in an afction on the case for damages caused hy the erection of a dam across a stream hy a previous owner, asks for instructions based upon the assumption that there can he no legal dam across a watercourse, unless established hy legal proceedings under statutory Authority, ignoring entirely rights acquired hy actual grant, hy permission and presumptive rights, derived from long use and enjoyment, where there is any evidence in respect to such rights, these instructions are properly refused. Field v. Brown, 24 Gratt. 74.
h. Competency.
Who Not Competent as Expert. — A person who all his life has heen familiar with the effect of a dam upon the channel of a stream, and who has twice superintended the putting up of the dam, and who was familiar with the effect on the channel when the dam was washed away, hut who was not a millwright, or mechanic of any sort, is not competent to give evidence as an expert, as to the effect of a dam upon a stream in another county. Ellis v. Harris, 32 Gratt. 684.
When Plaintiff Competent, Defendant Owner Being Dead. — In an action against a mill owner for injury caused hy the erection of a dam, where the question is whether the acts of the deceased in building his dam across the stream, injured the land of the plaintiff, the latter is a competent witness to prove the condition of his land, the character of the stream, the effect of the dam on the stream and on adjacent land, and other independent facts, as to which his testimony, if untrue, could he rebutted hy others as readily as hy the deceased. Field v. Brown, 24 Gratt. 74.
Record of Suit Competent to Rebut Adverse Possess sion. — in order to rebut the evidence of adverse possession introduced hy the defendant to an action on the case for injury to land hy a dam, the record of a former suit hy the plaintiff against the administrator of a former owner of the premises, under whom the defendant claims, brought within twenty years from the date of the raising of the dam, for injury sustained hy the same, and in which the plaintiff recovered damages, is competent for the plaintiff. Field v. Brown, 24 Gratt. 74.
c. Admissibility.
Parol Evidence to Controvert Record. — Parol evidence is inadmissible to show that the legality of the erection of a dam was not in issue in a former case, when the record of that case shows that its legality was in issue. Ches., etc., R. Co. v. Bison, 99 Va. 18, 37 S. E. Rep. 320.
Evidence of Effect of Dams in One County Inadmissible in Another. — In an action to recover damages for injury to land caused hy the overflow of a dam, in the county of Louisa, evidence of the effect of a dam in raising the bottom of a stream, and overflowing lands in the county of Albemarle, is inadmissible. Ellis v. Harris, 32 Gratt. 684.
Evidence to Show Defect in Inquisition Should Be Admitted. — The inquisition of the jury in a mill case was that the health of the neighborhood would not he affected, and it was opposed hy a defendant on the ground of insufficiency, and that it was defective as to its effect on health, and intimated that if the objection was overruled he would offer testimony on that point'. The court overruled the objection and refused to hear the evidence. This was *457 held on appeal to be error, as the testimony should have been heard. Smith v. Waddill, 11 Leigh 532.
Evidence of Title Inadmissible When Applicant in Possession Claiming Title. — The widow being in possession oí a mansion house and plantation, as dower had not been assigned to her, notice was given to her by an applicant, desiring to bnild a dam against her land, that he would apply for a writ of ad quod damnum,. After the writ was awarded and the inquisition returned, one of the heirs, residing on the place with his mother, was made a defendant and ashed the dismissal of the case because no notice was given him as one of the proprietors. This being overruled he offered evidence to show that the applicant was not the owner of the land; but it being proven that the applicant was in possession claiming title, and had built a house thereon, it was no error for the court to refuse to admit this evidence. Pitzer v. Williams, 2 Rob. 241.
Pacts May Be Proved Prior to Period Stated In Declaration. — In an action of covenant the breach of covenant charged in the declaration was, that during a specified period of time, the defendant deprived plaintiff of the water necessary for his mill, by diverting it therefrom, and suffering it to be diverted by others. The plaintiff is not limited in proving acts committed by the defendant or other persons, to the period stated in the declaration; but he may prove previous acts, in consequence of which the injury was sustained during that time. Hollingsworth v. Dunbar, 5 Munf. 199.
Recitals In Declaration — Evidence Admissible. — In 1824, a dam was built across a river, and did the land above the dam no injury. But in 1845, the owner of the land raised the dam, which caused injury to the land. The owner sued the owner of the dam claiming under the prior owner for continuing the dam, to the injury of his land, and in his declaration recited that the dam was erected without authority of law. Under this declaration the plaintiff may prove that the dam was raised in 1845, and the injury to his land was caused by raising it. Field v. Brown, 24 Gratt. 74.
Adverse Possession Presumptive Evidence — May Be Rebutted. — In an action on the case by the owner of a mill against the defendant for causing the water in a stream to flow back and obstruct his mill, it appeared that the defendant claimed under a person who had obtained leave to build a dam below, provided he did not dam the water higher than a particular log. The water was dammed higher than the log, and was backed upon the plaintiff. This state of affairs had existed for more than twenty years, ft was held that the twenty years’ exclusive and adverse user was not conclusive evidence of the defendant’s right, but only presumptive, and that evidence showing that this user was not acquiesced in, but contested, was proper evidence to rebut the presumption. Nichols v. Aylor, 7 Leigh 546.
So in an action for injury to land by continuing a dam erected across a stream by a previous owner, the defence is adversary possession bj' the defendant, and those under whom he claims for more than twenty years. This presumption may be rebutted by the plaintiff proving what passed between his agent and a former occupant of the premises, showing that the agent denied the right of the former occupant to raise the dam, and that the latter requested it as a privilege for a short time. Field v. Brown, 24 Gratt. 74.
6. T’l/EA and replication.
Dam Adjudged Unlawful in Former Action. — Where an action was brought for damages for failure to maintain a dam for the benefit of the plaintiff’s mill, a plea that in a former action by the grantors of the plaintiff against the defendant the dam was adjudged unlawful, states a good defence, since the right of the plaintiff cannot be maintained, as the dam is unlawful. Ches., etc., R. Co. v. Rison, 99 Va. 18, 37 S. E. Rep. 320.
Compliance with Statutory Authority. — In an action brought by a mill owner for damages for the diversion of water from his mill, a plea that the defendant, by statutory authority was empowered to construct a dam and operate a canal, and was required to keep the canal supplied with water for the purpose of navigation, and that it was necessary to withdraw water from the river at the mill, and that no more was used than was necessary, states a sufficient defence. Ches., etc., R. Co. v. Rison, 99 Va. 18, 37 S. E. Rep. 320.
Contention Not Considered Unless Pleaded —Where in an action against a mill owner, the damage resulting from a dam, lawfully constructed, is in issue, the contention that certain rights of the plaintiff were not condemned, and could not be condemned, will not be considered, when such rights are not pleaded. Ches., etc., R. Co. v. Rison, 99 Va. 18, 37 S. E. Rep. 320.
Insufficient Replication.' — To an action for damages for. the diversion of water from a mill, it was pleaded that the defendant was required by statute to supply water from its dam for the navigation of a canal, causing the diversion complained of, and the replication stated that the act authorizing the dam had only provided that compensation be made for foreseen damages, and that the damages to the plaintiff could not be foreseen. This was insufficient, as the effect of the diversion of water from the dam could have been seen at the time of the inquest. Ches., etc., R. Co. v. Rison, 99 Va. 18, 37 S. E. Rep. 320.
7. VERDICT. — See subsec. 4, “Inquisition.’' supra.
Omissions Render Imperfect Inquest Quashed. — Oil an application to raise a milldam already erected, the verdict only responds to the damage done a contiguous owner, by flooding his land, and not to the health of the neighborhood. This verdict is imperfect and the inquest will be quashed. Kownslar v. Ward, Gilmer 127.
■ Unnecessary Inquiries Regarded as Surplusage, — In a proceeding to obtain leave to add to the height of a milldam, if the jury is directed to ascertain damages accruing from the dam already erected, the error should be regarded as surplusage (the petition for the writ having only prayed for such inquiry as the law authorizes) if the jury assessed such erroneous damages separately, and the court did not direct the same to be paid, but only the damages properly assessed. Eppes v. Cralle, 1 Munf. 258.
Effect on Petitioner — Finding as to Health. — A finding of a jury in a mill case, that “probably the health of certain families who live near the pond will be annoyed by the stagnation of the water,” is conclusive against the petitioner. Mayo v. Turner, 1 Munf. 405.
Lack of Particularity in Indictment Cured by Verdict. —An indictment for a nuisance caused by a certain mill and milldam, the property of the defendant situated near a common highway, without particular specification or description of the mill, and without expressly alleging that it is in the county *458 wherein the indictment is found, is good and sufficient after verdict. Stephen v. Com., 2 Leigh 759.
What Verdicts Sufficiently Special. — If the verdict of a jury in a mill case finds that a certain number of acres of land will he overflowed, estimated at a certain price, and that all other damages which the owner will sustain for probable injury to other lands and inconveniences, are estimated by them at a further sum expressed in their inquest, the verdict is special enough. Dawson v. Moons, 4 Munf. 535. See Coleman v. Moody, 4 H. & M. 1.
Likewise in a proceeding for the erection of a mill if the jury find that a certain number of acres of land will be overflowed, “together with all other damages to the value of a certain sum,” the verdict is special enough, and will not be a bar to an action for any damages not foreseen and estimated by them. Coleman v. Moody, 4 H. & M. 1; Dawson v. Moons, 4 Munf. 535.
8. JUDGMENT.
Effect on Issues Raised. — A judgment which determines the legality of a dam, when such issue has been raised by the pleadings, is conclusive between the parties or their privies in a subsequent action, as they are estopped from denying such fact. Ches., etc., R. Co. v. Rison, 99 Va. 18, 37 S. E. Rep. 320.
Has No Effect on Issues Not Decided — It cannot be contended that a judgment which only authorized the construction of a dam, and did not find that the dam actually constructed was lawful, will defeat an estoppel arising from a subsequent judgment finding the dam tobe illegal. Ches., etc., R. Co. v. Rison, 99 Va. 18, 37 S. E. Rep. 320.
Granting Application on Condition — Incident to Grant. —Where the j udgment of the court, granting leave to erect a dam, provides that the applicant shall keep a ferry boat at the crossing of a public road over the stream, the duty of keeping up the boat is not merely personal to the grantee of the privilege of erecting the dam, but it is a condition and incident to the grant, and attaches to it into whosesoever hands it may pass. Mairs v. Gallahue, 9 Gratt. 94.
Reversed for Uncertainty. — When the jury, on an application proceeding for leave to build a mill, suggested three plans, in each of which the damages were different, and in one of which the health of the neighborhood would be injured, and the court established the mill generally, without confining the applicant to either plan, the order will be reversed for uncertainty. Coalter v. Hunter, 4 Rand. 58.
Where Applicant Owns Both Sides of Stream. — A judgment, which gives leave to the proprietor of the land on both sides of a stream to erect a mill and dam thereon, is valid and sufficient, though the record does not show to whom the bed of the stream belongs, and though the owner of land which the inquisition finds will be overflowed, had no notice of the time of making the application for the writ of ad ouod damnum, or of the time of executing the same. Hunter v. Matthews, 1 Rob. 468.
Erroneous Giving of Land Injured to Applicant on Payment of Damages. — Where, upon an application to the county court for leave to erect a mill and dam, the inquisition finds that a certain quantity of land not belonging to the applicant will be overflowed, and assessed damages to the proprietor, it is erroneous for the judgment, granting leave to erect the mill and dam, to provide that upon payment of the assessed damages, the land overflowed shall become vested in the applicant in fee simple. Upon appeal by the proprietor to the circuit court, it must reverse the judgment with costs, though the appellee himself suggest the error and move that it be corrected. Hunter v. Matthews, 1 Rob. 468.
9. APPEALS.
Jurisdictional Amount. — In an action on the case for consequential damages, occasioned by the erection of a mill, if the damages recovered be less than $100, the defendant cannot appeal to the court of appeals, notwithstanding it appears from the record that the right to erect the mill was drawn in question. Skipwith v. Young, 5 Munf. 276.
Writ of Error from General Court. — A motion to abate a dam as a nuisance, as provided in the act of assembly authorizing its construction, is a criminal prosecution, and a writ of error lies from the general court to the order of the circuit superior court, affirming an order of the county court. White v. King, 5 Leigh 726.
When Witnesses Divided Judgment of Lower Courts Affirmed. — When, on a petition for a mill, the witnesses are divided whether it will be injurious or not, and the county court and district court "froth decide that it will not be injurious, the court of appeals will affirm the judgment. Home v. Richards, 2 Call 507.
Party Prevailing Entitled to Costs. — On an appeal in a mill case, the party prevailing ought to be allowed in the bill of costs, the mileage and attendance of his witnesses, summoned to the court of error, though the court determined on viewing the record, and therefore did not examine the witnesses. Eppes v. Cralle, 1 Munf. 258. '
In Absence of Contrary Evidence Actions of Lower Court Presumed Correct. — The judgment of the court giving permission to erect a dam provides that the applicant shall keep a ferry boat at the crossing over the stream across which the dam is to be erected. This was authorized by 2 Rev. Code, ch. 227, § 5; and as the county and circuit courts held that this would remedy any impediment to the crossing of the stream, the court of appeals will presume that they acted rightly, nothing being shown to the contrary. Mairs v. Gallahue, 9 Gratt. 94.
Evidence in Lower Court Presumed Sufficient When No Exception. — The judgment of the county court authorizing the erection of a dam was excepted to on the'ground that the health of the neighborhood would be injured; and the evidence was embodied in the exception. With all the evidence before it, the circuit court passed upon the question, and no exception was taken to its opinion. As both county and circuit court were satisfied upon the question, the court of appeals will presume that the evidence was sufficient to show that the health of the neighborhood would not be affected by the dam. Mairs v. Gallahue, 9 Gratt. 94.
Supersedeas — Lies Only for Interested Party. — A supersedeas to a judgment of a county court, granting leave to erect a mill, will not lie on behalf of a person who may be interested, but whose name does not appear in the record of the county court as a party. Such person should make himself a party to the contest before the final decision in the county court, and then it is competent for him to carry the case to a superior tribunal. Wingfield v. Crenshaw, 3 H. & M. 245.
Same — Appellate Court Not Confined to Errors Apparent in Record. — If a supersedeas be granted to an order of an inferior court, giving leave to build a mill, the superior court is not confined to errors apparent *459 on the face of the record. Lee v. Turberville, 2 Wash. 162.
Remand of Cause — Inquisition Erroneously Quashed and Relevant Testimony Excluded. — When the order of the circuit superior court in a mill case was erroneous in quashing the inquisition found in the county court, and it also erred in refusing- to admit certain testimony as to it, the court of appeals should reverse the order with costs, and the cause should be remanded to that court, to be there heard upon the evidence and the merits. Smith v. Waddill. 11 Leigh 532.
Same — Judgment against Plaintiff without Prejudice to Future Application. — On an appeal to the circuit superior court, from the county court giving the plaintiff leave to build a mill and dam in a mill case, the judgment was reversed, inquisition quashed, and judgment was given for the defendant without prejudice to a future application. The appellate court should have remanded the cause to the county court for further proceedings to be there had. Hunter v. Matthews, 12 Leigh 328.
10. REVIVAL AND REMOVAL.
Prior to Code of 1849 Revival against Heirs of Defendant — If prior to the Code of 1849, any party resisting an application for permission to huild a mill had died, the proceeding might have been revived against his heirs, not by virtue of any statute, but from the very nature of the statutory proceedings by the writ of ad quod damnum. See, as to revivals, Code of 1849, ch. 173, p. 656; Hale v. Burwell, 2 P. & H. 608.
Removal to Circuit Court under Code 1849. — An application for permission to build a mill is a civil action, which under the 4th section of the Act of March 14, 1843, amended and re-enacted in the Code of 1849. p. 657, §§ 1 and 2, may be removed from the county to the circuit court, after it has been pending in the former court for twelve months. Hale v. Burwell, 3 P. & H. 608.
11. RECORD.
Should Show Notice or Waiver. — Upon an application for leave to build a mill, it should appear to the appellate court by the record, that the party whose property is sought to he condemned, had ten days’ previous notice of the motion for a writ ot ad quod damnum. This might he dispensed with, if the record shows that the proprietor appeared and contested the application upon the merits. A general appearance will not be sufficient. Bernard v. Brewer, 3 Wash. 76.
Should State Bed of Stream in Applicant or Commonwealth. — Upon an appeal from an order giving leave to build a mill, the record should state that it appeared to the court granting the order, that the bed of the watercourse was in the applicant, or in the commonwealth. Richards v. Hoome. 2 Wash. 36.
What Statements by Clerk Sufficient. — it is sufficient for the clerk to state in the record of a mill case, that the writ of ad quod damnum with the inquisition annexed, was returned by the sheriff, without inserting a copy of the signature of the sheriff or his deputy to the return; a copy of the inquisition itself with the signatures of the jurors being inserted in the record. Coleman v. Moody, 4 H. & M. 1.
VI. DAMAGES
Measure of for Injury to Real Property. — in an action to recover for injuries to real property resulting from the construction and maintenance of a dam backing water thereon, the measure of damages is the difference between the value of the property at the time the damages were inflicted and its value before such was done. Rowe v. Shenandoah Pulp Company, 42 W. Va. 551, 26 S. E. Rep. 320, 57 Am. St. Rep. 870.
Court Cannot Increase Damages Assessed by Jury. — It is not within the power of the court in a mill case to increase or diminish the damages, which have been assessed by the jury, as resulting to the adjoining proprietors. Whitworth v. Puckett, 2 Gratt. 528.
When Payment of Damages Presumed — Under some circumstances payment of the damages assessed in a mill case, ought to be presumed, as where a great length of time has elapsed, during which the owner of the land, to whom such damages were assessed, acquiesced in the building of the mill, without claim or objection on his part. Young v. Price, 2 Munf. 534.
Injury at Time of Erection of Dam — Subsequent Injuries — Presumption.—Where the erection of a dam results in injury to land by overflows, the owner may recover full damages for all the land owned by him at the time of the erection of the dam. But for injuries for land since acquired by him he can only recover such damage as was not actually foreseen and estimated by the jury when the dam was built. The jury must presume that the jury of the inquest did foresee and estimate all damages which were then practicable to foresee and estimate for. Ellis v. Harris, 32 Gratt. 684.
Injuries for Negligence in Keeping Guard Bank in Repair. — In an action for injury to land from negligence in not keeping a guard bank to a dam in proper repair, only the injuries suffered after the plaintiff’s purchase can be considered. Ches., etc., R. Co. v. Chambers, 95 Va. 503, 38 S. E. Rep. 872.
Though one condemn land for dam, abutment, and guard bank and pay damages assessed therefor, damages can afterwards be had for injury to the part of the tract not condemned, resulting from negligence in not keeping the guard bank in proper repair. Ches., etc., R. Co. v. Chambers, 95 Va. 503, 28 S. E. Rep. 872.
Petition to Increase Height of Dam — Proper Inquiry of Damages. — On a petition for leave to add to the height of a dam, the only proper subject of inquiry is what damages will be occasioned by the proposed addition. It is error therefore to direct a jury to assess such other damages, accruing from the dam already erected as were not contemplated by the original jury. Eppes v. Cralle, 1 Munf. 258.
Order Granting Mill Valid without Direction to Pay Damages. — An order of court granting leave to erect a mill is valid, though no order be made directing payment of the damages found by the inquisition. Coleman v. Moody, 4 H. & M. 1.
VH. CRIMINAL PROSECUTIONS.
Obstruction of Navigation or Passage of Fish,—
A boom company may be proceeded against by indictment for erecting and maintaining a dam or other things, in any watercourse which is a public highway, which dam obstructs the navigation or the passage of fish, under sec. 24, ch. 44, W. Va. Code 1891. State v. Elk, etc., Co., 41 W. Va. 796, 24 S. E. Rep. 590.
Leave of Court to Build No Bar to Prosecution,-
Although leave has been given by the county court to erect a mill according to the provisions of the statute, yet that is no bar to a public prosecution or private action for injuries, other than those actually *460 foreseen, and estimated by the inquest. Com. v. Faris, 5 Rand. 691.
Throwing Sawdust in Water No Offence. — Casting sawdust into a brook from the operation of a sawmill does not constitute an offence under W. Va. Code 1891, ch. 150, sec. 20b. State v. Mitchell (W. Va.), 35 S. E. Rep. 845.